NOTICE
Decision filed 10/22/15. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2015 IL App (5th) 130525

NO. 5-13-0525

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Lawrence County. |
| | ) | |
| v. | ) | No. 07-CF-152 |
| | ) | |
| JOHN HOTWAGNER, | ) | Honorable |
| | ) | Robert M. Hopkins, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE SCHWARM delivered the judgment of the court, with opinion.
Presiding Justice Cates and Justice Goldenhersh concurred in the judgment and opinion.

**OPINION**

¶ 1                                 I. FACTS

¶ 2     Following a domestic incident that occurred in October 2007, the defendant, John Hotwagner, was charged in Lawrence County case number 07-CF-152, with two counts of aggravated criminal sexual assault (720 ILCS 5/12-13(a)(1) (West 2006)) (counts I and II) and one count of aggravated unlawful restraint (720 ILCS 5/10-3.1(a) (West 2006)) (count III). At the defendant's first appearance, he requested counsel, and the trial court appointed public defender Brad Vaughn to represent him. The defendant was subsequently represented by private counsel, Roscoe Cunningham, until February 2008,

1

when citing "no payment for legal services rendered," Cunningham was granted leave to withdraw.

¶ 3     In March 2008, the defendant appeared *pro se* at his final pretrial conference and pled guilty to count II in exchange for a 12-year sentence and the State's dismissal of counts I and III.  When discussing the terms of the plea agreement, then-State's Attorney Patrick Hahn advised the trial court that he and the defendant had reached the agreement after talking outside the courtroom.  Noting that Cunningham had recently withdrawn, Hahn further advised that he had asked the defendant if he wanted a court-appointed attorney or if he wanted to speak with him and that the defendant had advised that he wanted to speak with him.  Hahn did not, however, indicate who had initiated the conversation or the plea negotiations.  Before entering his plea, the defendant was admonished pursuant to Illinois Supreme Court Rule 402 (eff. July 1, 1997) and waived his right to counsel in open court.

¶ 4     In September 2009, the defendant filed a *pro se* petition for relief pursuant to the Post-Conviction Hearing Act (the Act) (725 ILCS 5/122-1 *et seq.* (West 2008)).  In his *pro se* petition, the defendant alleged that when he appeared for his final pretrial conference in March 2008, he had "expected to be met by his attorney, Roscoe D. Cunningham, [but] instead was met by State's Attorney Patrick Hahn outside the courtroom."  The defendant further alleged that after informing him that Cunningham had " 'quit [him],' " Hahn had "then said[,] 'You can take 12 years now[,] or I'll give you 20 or better next week at trial.' "  Claiming that he had not previously been informed that he "no longer had legal representation" and that he had felt "ambushed and threatened" by

Hahn, the defendant suggested that his guilty plea had been coerced rather than knowingly and voluntarily entered. The defendant further alleged that "[f]eeling abandoned and unsure of what [he] should do," he had "mentally blanked out" and was thus "incompetent and unable to cope with the legal proceedings."

¶ 5 The defendant's *pro se* petition included an affidavit from inmate Tyler Newlin, who indicated that he had been outside the courtroom along with the defendant and had witnessed the encounter between the defendant and Hahn. Newlin maintained that he had "witnessed the State[']s Attorney, Mr. Patrick Hahn[,] approach [the defendant] and inform him that his attorney had 'quit.' " According to Newlin's affidavit, Hahn had "then made the following statement in a threatening tone[:] 'You can take the 12 years today, or I will give you 20 years next week at trial.' " Newlin further asserted that the defendant had not been "allowed the chance to consult with [an attorney] before going to trial and accepting the State's offer."

¶ 6 In March 2010, the trial court appointed attorney Matthew Hartrich to represent the defendant on his postconviction petition. In June 2010, Hartrich filed an amended petition on the defendant's behalf. The amended petition incorporated by reference "all of the allegations" in the defendant's *pro* se petition and specifically alleged the following:

> "The State's Attorney spoke with [the defendant] without his attorney being present and obtained the guilty plea with [the defendant] without his attorney being present, which violated [the defendant's] right to counsel. U.S. Const., amend. VI, XIV; Ill. Const. 1970, art. I, sec. 8."

3

Notably, the State did not address this allegation in its motion to dismiss the defendant's amended petition for postconviction relief, which was filed by then-State's Attorney Lisa Wade in July 2010. The State observed, however, that the defendant had waived his right to counsel when entering his guilty plea.

¶ 7 In July 2010, Hartrich filed a certificate attesting that he had complied with the requirements of Illinois Supreme Court Rule 651(c) (eff. Dec. 1, 1984). Hartrich specifically certified that he had "consulted with the [defendant] in person to ascertain his contentions of deprivation of constitutional rights," had "examined the trial court file and report of proceedings of the plea of guilty," and had "made any amendments to the petition filed *pro se* that [were] necessary for an adequate presentation of [the defendant's] contentions."

¶ 8 In September 2010, following a hearing, the trial court granted the State's motion to dismiss the defendant's amended petition for postconviction relief and thus denied the defendant an evidentiary hearing on his underlying claims. When dismissing the amended petition, the trial court noted that when entering his guilty plea, the defendant had been "offered appointed counsel, and he waived his right to appointed counsel."

¶ 9 The defendant subsequently appealed the trial court's dismissal of his amended postconviction petition. Citing *People v. Card*, 188 Ill. App. 3d 213 (1989), the defendant argued that the trial court erred in dismissing the petition because he had made a substantial showing that the State had violated his sixth amendment right to counsel by "contacting him directly and negotiating a guilty plea with him."

4

¶ 10   In August 2012, this court reversed the trial court's second-stage dismissal of the defendant's amended postconviction petition, noting that under *Card*, a defendant who has previously invoked his sixth amendment right to counsel can validly waive that right in the context of plea negotiations "only if he, rather than the State, 'initiated the plea bargaining.' " *People v. Hotwagner*, 2012 IL App (5th) 100461-U, ¶ 21 (quoting *Card*, 188 Ill. App. 3d at 215).  Accepting the factual allegations in the defendant's amended petition as true, we thus determined that the defendant had made a substantial showing that the State had violated his sixth amendment right to counsel by improperly initiating the negotiations that resulted in his guilty plea. *Id.* ¶¶ 18, 23.  Accordingly, we remanded the cause for an evidentiary hearing on the claim. *Id.* ¶¶ 24, 26.

¶ 11   In November 2012, the trial court granted Hartrich leave to withdraw and entered an order appointing Abbey Brian as third-stage postconviction counsel.  In April 2013, the cause proceeded to an evidentiary hearing, where the following evidence was adduced.

¶ 12   The defendant testified that he was 44 years old and was incarcerated at the Centralia Correctional Center.  Following his October 2007 arrest, the defendant was initially represented by court-appointed attorney Vaughn, but the defendant's family later hired Cunningham to represent him.  Cunningham appeared with the defendant at his preliminary hearing in November 2007 and at his formal arraignment in December 2007.  The defendant stated that when he appeared for his final pretrial conference in March 2008, he had not spoken with Cunningham since December 2007 and had not received word that Cunningham had withdrawn his representation.  The defendant further stated

5

that he had never received written notice of Cunningham's intent to withdraw. The defendant testified that the last time he had spoken with Cunningham, Cunningham had indicated that he had negotiated a plea agreement with Hahn and that at the final pretrial conference, the defendant would plead guilty to a charge of "regular battery" and "everything [else] would be dropped." According to the defendant, "[t]hat's what [he] was expecting" would happen at the final pretrial conference. The defendant testified that while waiting for Cunningham outside the courtroom, however, Hahn had approached him and asked to speak with him. The defendant testified that Hahn had initiated the contact. The defendant stated that after advising him that Cunningham had "quit on [him]," Hahn had asked him if he wanted an attorney appointed or if he was willing to talk without one. The defendant testified that he had subsequently spoken with Hahn because he did not want to make him "mad." The defendant stated that approximately 20 minutes later, he was brought into the courtroom, where he pled guilty to count II and received a 12-year sentence.

¶ 13 When cross-examined, the defendant testified that Hahn had "ambushed" him by approaching him in the hallway and basically saying, "[E]ither take this deal or we're going to slam you." The defendant stated that he had been unaware that Cunningham was no longer his attorney until Hahn had informed him that such was the case. The defendant acknowledged that while he was incarcerated following his arrest, he had spoken with Cunningham over the telephone. He testified that after December 2007, however, "every time [he] would call [Cunningham's] office[,] nobody would answer."

6

¶ 14　The defendant acknowledged that he knew that he had the right to have an appointed attorney present when he spoke with Hahn and had not requested one. The defendant explained that he had "felt like [Hahn's offer] was a one-time deal" and that having an attorney appointed "was the furthest thing from [his] mind at the time." The defendant indicated that he and Hahn had spoken for less than five minutes and that when he brought up the plea agreement that Cunningham had allegedly negotiated, Hahn had said something about it being "bullshit." The defendant claimed that Hahn had "played on [his] emotions" and had "caught [him] at a bad time." The defendant testified that Newlin had been with him when Hahn had approached him and that some correctional officers had also been present. The defendant indicated that he had been "on parole" when he was charged in the present case and that his parole had been revoked as a result of the charges.

¶ 15　The defendant acknowledged that he had agreed to the terms of his plea agreement in open court and had not stated that he had been ambushed or that he wanted an attorney appointed to represent him. The defendant further acknowledged that when entering his plea, he had understood the trial court's admonishments, had waived his right to an attorney, and had confirmed, among other things, that he had not been threatened, forced, or coerced into entering his plea.

¶ 16　On redirect, the defendant testified that when Hahn approached him in the hallway, Hahn had "[b]asically" said, "[Y]our lawyer quit on you. You could take this 12 years today[,] or I am going to give you 20 or better next week." The defendant further testified that he had not had "any opportunity to process this information" and had not

7

had "the opportunity to discuss this offer with anybody else." The defendant stated that he had felt like he "had no choice" but to accept Hahn's offer.

¶ 17 On recross, the defendant acknowledged that he knew that count II was a Class X felony with a statutory sentencing range of 6 to 30 years. He also acknowledged that on prior occasions, he had entered guilty pleas to other felony charges. The defendant testified that in the present case, however, he "didn't even realize what [had] happened until after the fact." On further redirect, the defendant stated that he had never previously represented himself when entering a plea of guilty.

¶ 18 Hahn testified that he was the Lawrence County State's Attorney from 2004 through 2008. Hahn stated that he remembered the defendant "for several reasons" and recalled that "the nature of the [defendant's] crime was pretty bad." Hahn indicated that in addition to the charges that had been filed in Lawrence County, the defendant had also been charged in Clark County with offenses arising from the same incident. Hahn further indicated that the defendant had pled guilty to the charges in Clark County sometime prior to March 2008.

¶ 19 With respect to the events that led to the entry of the defendant's March 2008 guilty plea, Hahn testified that although the cause was set for a final pretrial conference, he had anticipated that in light of Cunningham's recent withdrawal, the defendant "would either ask for an attorney or advise the [c]ourt that he wanted additional time to hire an attorney." Hahn testified that as he was walking through the hallway towards the courtroom, however, the defendant, who "was there with [Department of Corrections] personnel," had politely asked to speak with him. At that point, Hahn asked the

8

defendant if he wanted to talk or if he wanted to have an attorney appointed to represent him. Hahn testified that the defendant had responded by stating that he wanted to talk and "get this over with." Hahn stated that he and the defendant had subsequently "walked over to the side," where the defendant indicated that he "wanted to plead for six years." Explaining that his "internal rule of thumb" for Class X felonies and sexual assault cases was to always obtain "double digits for the sentence," Hahn testified that he had rejected the defendant's proposal. Hahn indicated that he had then made a counteroffer of "somewhere between 15 and 16," and the defendant said that he "was willing to do 12." Shortly thereafter, the agreement was presented to the court, and the defendant entered his guilty plea.

¶ 20    Hahn testified that he did not recall having any specific dealings with Cunningham in the present case. Hahn indicated that based on prior experiences, however, he had learned that if he wanted to try to negotiate with Cunningham, "it was generally best for [Cunningham] to initiate the negotiations," which Cunningham often did "on the eve of trial." Hahn further indicated that he and Cunningham had never discussed a deal by which the defendant would plead guilty to a charge of battery and "everything else would be dismissed." Hahn testified that there was "no doubt in [his] mind that [the defendant had] initiated the discussion" in the hallway and had "asked to speak with [him]." Hahn testified that "that's when [he had] asked [the defendant] if he wanted to have an attorney appointed first, and he said no, he wanted to get it over with."

¶ 21    When cross-examined, Hahn acknowledged that he knew that the defendant was no longer represented by counsel when they negotiated their plea agreement. Hahn did

9

not recall advising the defendant that Cunningham had "quit him," but he indicated that the defendant had not acted surprised when he had asked him if he wanted to have an attorney appointed to represent him. Hahn acknowledged that he had not told the defendant that he could not speak with him but had rather asked him, "[D]o you want to talk to me or do you want to have an attorney appointed for you[?]" On redirect, indicating that he had recently reviewed "the transcripts," Hahn apologized for not having made a better record of the events that led to the entry of the defendant's guilty plea.

¶ 22    During closing arguments, Brian maintained, among other things, that it was "clear that the State [had] initiated the contact here." Brian further suggested that "the fact that the conversation [even] occurred" was a violation of the defendant's right to counsel. The State countered that "it was the [d]efendant who [had] initiated the discussion with Mr. Hahn and not the reverse." Referencing *Card*, the State argued that the defendant had thus waived his right to counsel. The State also suggested that before continuing their conversation, Hahn had "protect[ed] himself in a sense" by confirming that the defendant did not want to have an attorney appointed to represent him. Stating that the defendant was "not a person of feeble mind," the State also emphasized that the defendant acknowledged that he had understood the rights that he was "giving up" by entering his plea. Noting that there was "a contradiction between the two witnesses" regarding who had initiated the plea bargaining, the trial court subsequently took the matter under advisement.

¶ 23    In October 2013, the trial court entered a written order denying the defendant's amended postconviction petition. In its order, the trial court noted, among other things,

10

that the defendant's testimony at the evidentiary hearing "conflict[ed] sharply with the testimony presented on behalf of the State."  After thoroughly recounting the procedural history of the case, the evidence presented at the evidentiary hearing, and the applicable law, the court concluded as follows:

"Based upon all of the evidence presented at the third[-]stage hearing together with the transcripts of previous hearings in this case, and based upon the demeanor of the witnesses, this court finds that Defendant's version of the colloquy in the hallway *** is not credible.  The court finds that Defendant *** initiated the discussion with State's Attorney Hahn in the hallway and requested to talk to him and that Mr. Hahn only engaged him in discussions concerning a plea after he ascertained that Defendant, having been informed that he had [the] right to speak to an attorney or have a public defender appointed rather than talk to Mr. Hahn, expressed his intent to talk to Mr. Hahn about a possible plea.

From the context and circumstances, it is apparent to the court that Defendant *** was aware previous to the time of this colloquy that Attorney Cunningham no longer represented him.  It is also apparent from the testimony and circumstances that Defendant affirmatively engaged State's Attorney Hahn in discussion in order to negotiate with him.  Thus Defendant's Sixth Amendment rights to representation by counsel were not violated by this conversation and negotiation.

Furthermore, at the time the plea was taken, Defendant was again informed of his right to persist in a plea of not guilty and have an attorney appointed to

11

represent him and repeatedly stated his intent to waive the right to an attorney and enter into the plea agreement. Moreover, it was apparent to this court at the time the plea was taken, from Defendant's answers in the course of the court taking the plea and waivers and from Defendant's demeanor that he freely, knowingly and voluntarily waived his right to counsel and other rights of defense."

Brian subsequently filed the defendant's timely notice of appeal.

¶ 24                                    II. DISCUSSION

¶ 25    The defendant argues that his cause must be remanded for a new evidentiary hearing with new postconviction counsel because Brian failed to provide him with the reasonable level of assistance required under the Act. The defendant specifically maintains that Brian's representation was deficient in that she failed to cite controlling law in support of the defendant's claim that the State violated his sixth amendment right to counsel, failed to use available evidence to bolster the defendant's testimony as to when he learned that Cunningham was no longer his attorney, failed to call Newlin as a corroborating witness, and "filed a certificate after the hearing which indicated confusion as to the basics of the Act and her role in representing [the defendant]." For the reasons that follow, we disagree.

¶ 26                        A. The Post-Conviction Hearing Act

¶ 27    The Act sets forth a procedural mechanism through which a defendant can claim that "in the proceedings which resulted in his or her conviction there was a substantial denial of his or her rights under the Constitution of the United States or of the State of Illinois or both." 725 ILCS 5/122-1(a)(1) (West 2008). The Act provides a three-stage

process for the adjudication of postconviction petitions. *People v. English*, 2013 IL 112890, ¶ 23.

¶ 28    At the first stage, the trial court independently assesses the defendant's petition, and if the court determines that the petition is "frivolous" or "patently without merit," the court can summarily dismiss it.   725 ILCS 5/122-2.1(a)(2) (West 2008); *People v. Edwards*, 197 Ill. 2d 239, 244 (2001).   To survive the first stage, "a petition need only present the gist of a constitutional claim" (*People v. Gaultney*, 174 Ill. 2d 410, 418 (1996)), which is a "purposely low threshold for survival because most petitions are drafted at this stage by defendants with little legal knowledge or training" (*People v. Ligon*, 239 Ill. 2d 94, 104 (2010)).

¶ 29    If a petition is not dismissed at the first stage, it advances to the second stage, where an indigent petitioner can obtain appointed counsel and the State can move to dismiss it.   725 ILCS 5/122-2.1(b), 122-4, 122-5 (West 2008); *Edwards*, 197 Ill. 2d at 245-46.   At the second stage, the trial court is "foreclosed from engaging in any fact-finding because all well-pleaded facts not rebutted by the record are to be taken as true." *People v. Phyfiher*, 361 Ill. App. 3d 881, 884 (2005) (citing *People v. Coleman*, 183 Ill. 2d 366, 380-81 (1998)).   At the second stage, if the defendant makes a substantial showing of a constitutional violation, the petition advances to the third stage, where the trial court conducts an evidentiary hearing.   725 ILCS 5/122-6 (West 2008); *Edwards*, 197 Ill. 2d at 246.

¶ 30    At the third stage, a defendant has the burden of proving a substantial showing of a constitutional violation.   *People v. Pendleton*, 223 Ill. 2d 458, 472-73 (2006).   "An

attorney at the evidentiary hearing stage must argue the merits of the postconviction petitioner's claims as presented in the petition following review by counsel at the second stage." *People v. Marshall*, 375 Ill. App. 3d 670, 683 (2007). At the third stage, the trial court "may receive evidentiary proof via affidavits, depositions, testimony, or other evidence, and may order the petitioner brought before the court." *People v. Gerow*, 388 Ill. App. 3d 524, 527 (2009). An evidentiary hearing allows the parties to "develop matters not contained in the trial record and, thus, not before the appellate court." *People v. Lester*, 261 Ill. App. 3d 1075, 1078 (1994).

¶ 31 "Following an evidentiary hearing where fact-finding and credibility determinations are involved, the trial court's decision will not be reversed unless it is manifestly erroneous." *People v. Beaman*, 229 Ill. 2d 56, 72 (2008). This standard recognizes that "we must give great deference to the trial court's factual findings because the trial court stands in the best position to weigh the credibility of the witnesses." *In re Floyd*, 274 Ill. App. 3d 855, 867 (1995); see also *Coleman*, 183 Ill. 2d at 384 (noting that "the post-conviction trial judge is able to observe and hear the witnesses at the evidentiary hearing and, therefore, occupies a 'position of advantage in a search for the truth' which 'is infinitely superior to that of a tribunal where the sole guide is the printed record' " (quoting *Johnson v. Fulkerson*, 12 Ill. 2d 69, 75 (1957))). "A ruling is manifestly erroneous if it contains error that is clearly evident, plain, and indisputable." *People v. Hughes*, 329 Ill. App. 3d 322, 325 (2002).

¶ 32 As previously indicated, "[a]n indigent defendant is entitled to appointed counsel in postconviction proceedings if the petition is not summarily dismissed as frivolous or

14

patently without merit." *People v. Lander*, 215 Ill. 2d 577, 583 (2005). "A defendant is entitled only to the level of assistance required by the Act, however, because the right to counsel is wholly statutory and is not mandated by the Constitution." *Id.* "That assistance has been defined by [the supreme] court to mean a 'reasonable' level of assistance." *People v. Flores*, 153 Ill. 2d 264, 276 (1992); see also *People v. Turner*, 187 Ill. 2d 406, 410 (1999) ("It is well settled that the Act requires counsel to provide a 'reasonable level of assistance' to [a] petitioner in post-conviction proceedings.").

¶ 33                    B. *Strickland v. Washington*

¶ 34    In *People v. Albanese*, 125 Ill. 2d 100 (1988), the supreme court adopted the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), for determining whether a criminal defendant was denied effective assistance of trial counsel under both the state and federal constitutions. *People v. Chatman*, 276 Ill. App. 3d 619, 622 (1995). To succeed on a claim of ineffective assistance of counsel under the *Strickland* standard, a defendant must show that counsel's performance fell below an objective standard of reasonableness and that counsel's deficient performance resulted in prejudice. *People v. Ross*, 229 Ill. 2d 255, 260 (2008); *People v. Shaw*, 186 Ill. 2d 301, 332 (1998). "Further, in order for a defendant to establish that he suffered prejudice, he must show a reasonable probability that, but for counsel's deficient performance, the result of the proceedings would have been different." *People v. Burt*, 205 Ill. 2d 28, 39 (2001). "Because a defendant must establish both a deficiency in counsel's performance and prejudice resulting from the alleged deficiency, failure to establish either proposition will be fatal to the claim." *People v. Sanchez*, 169 Ill. 2d 472, 487 (1996).

15

¶ 35 "Neither mistakes in strategy nor the fact that another attorney with the benefit of hindsight would have proceeded differently is sufficient to establish ineffective assistance of counsel." *People v. Dobbs*, 353 Ill. App. 3d 817, 827 (2004). Additionally, a defendant "cannot rely on speculation or conjecture to justify his claim of incompetent representation." *People v. Holman*, 164 Ill. 2d 356, 369 (1995). "Counsel is presumed to know the law" (*People v. Perkins*, 229 Ill. 2d 34, 51 (2007)), and "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy' " (*Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955))).

¶ 36                                    C. The Defendant's Claims

¶ 37 Because trial counsel and postconviction counsel serve different roles, because a postconviction petitioner has "already been stripped of the presumption of innocence," and because the right to postconviction counsel is not constitutionally required, the reasonable level of assistance required under the Act is not coextensive with the level of assistance required under *Strickland. People v. Owens*, 139 Ill. 2d 351, 364-65 (1990); *People v. Gully*, 243 Ill. App. 3d 853, 863-64 (1993). The Act does "not guarantee that [a petitioner] will receive the same level of assistance that the Constitution guarantees to defendants at trial." *Owens*, 139 Ill. 2d at 364; see also *People v. Davis*, 388 Ill. App. 3d 869, 884 (2009) (noting that a defendant "is not constitutionally entitled to the effective assistance of counsel at a postconviction proceeding" but is rather entitled to a "reasonable level of assistance"). "*Strickland* is thus not applicable" or at least "not

16

automatically applicable" to claims that postconviction counsel's assistance was less than reasonable. *People v. Perkins*, 367 Ill. App. 3d 895, 901-02 (2006), *rev'd on other grounds*, 229 Ill. 2d 34 (2007). It has been suggested, however, that although *Strickland* "is not the relevant standard" for addressing such claims, "the *Strickland* test is an essential standard for comparison." *Id.* at 901. It further stands to reason that if postconviction counsel's performance cannot be deemed deficient under *Strickland*, it cannot be said that counsel failed to provide the reasonable level of assistance required under the Act. Here, evaluating the defendant's complaints regarding Brian's performance under the elevated *Strickland* standard, his claim that he was denied the right to reasonable assistance still fails.

¶ 38                    1. *Failure to Cite Controlling Law*

¶ 39    The defendant argues that Brian "failed to cite controlling law" in support of her argument that the State violated the defendant's sixth amendment right to counsel. See *People v. Kelly*, 2012 IL App (1st) 101521, ¶¶ 31, 32, 40 (holding that postconviction counsel failed to provide a reasonable level of assistance where counsel failed to cite "controlling Supreme Court precedent," failed to present the defendant's arguments in appropriate legal form, allowed the defendant's petition to languish for years, and made comments indicating that counsel "either lacked basic knowledge of the Act or fundamentally misunderstood it"). The controlling precedent in the present case was *Card*, however, and the defendant concedes that his cause was remanded for an evidentiary hearing to determine whether there was a constitutional violation under *Card*. Nevertheless, citing *Boyd v. Dutton*, 405 U.S. 1 (1972), the defendant suggests that Brian

17

should have argued that the waiver of the right to counsel "will not be 'lightly presumed,' and a trial judge must 'indulge every reasonable presumption against waiver.' " *Id.* at 3 (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). The issue in *Boyd*, however, was whether the defendant had knowingly and voluntarily waived the right to counsel where "the material facts bearing upon that issue were inadequately developed in the state court post-conviction hearing." *Id.*; see also *Cormier v. Saba*, 953 F. Supp. 2d 274, 285 (D. Mass. 2013) (noting that in *Johnson*, "the Supreme Court addressed the conviction of a man who had never been offered an attorney by the trial court, had been denied one by the District Attorney, and who apparently was never informed of his right to counsel"). Moreover, the *Boyd* Court recognized that the right to counsel may be waived by a "voluntary and knowing action" (405 U.S. at 2-3), which is consistent with *Card* and the United States Supreme Court cases upon which *Card* was decided (see *Michigan v. Jackson*, 475 U.S. 625 (1986), *overruled on other grounds by Montejo v. Louisiana*, 556 U.S. 778 (2009); *Edwards v. Arizona*, 451 U.S. 477 (1981); *Card*, 188 Ill. App. 3d at 215-16). "[C]ounsel is not required to raise losing arguments to avoid an ineffective-assistance claim" (*People v. Cavazos*, 2015 IL App (2d) 120171, ¶ 82), and the defendant's claim that Brian failed to argue controlling authority is without merit.

¶ 40    2. *Failure to Bolster the Defendant's Claims Regarding Counsel's Withdrawal*

¶ 41    On February 8, 2008, Cunningham filed his notice and motion to withdraw with the trial court and certified that on February 7, 2008, he had forwarded copies of the same to the defendant at the defendant's prison address. Cunningham did not, however, include the defendant's inmate number in the prison address listed on the filed notice. In

its February 25, 2008, order granting Cunningham leave to withdraw, the trial court directed him to serve the defendant with a copy of the order pursuant to Illinois Supreme Court Rule 13 (eff. July 1, 1982) and further directed the circuit clerk to forward a copy of the order to the defendant. On March 5, 2008, the copy that the circuit clerk attempted to forward was returned as undeliverable due to the clerk's failure to include the defendant's correct inmate number in his prison address. It is unclear whether the defendant ever received a copy of the notice or the order from Cunningham.

¶ 42 On appeal, the defendant suggests that Brian should have used the incomplete address on Cunningham's notice to corroborate the defendant's testimony that he never received the notice. The defendant specifically claims that Brian "never pointed out the address error in the [n]otice" and "failed to use the incomplete address on the February 2008 [n]otice to corroborate [his] testimony that he did not receive the [n]otice." These claims, however, are somewhat misleading, if not belied by the record.

¶ 43 When Brian argued that the defendant had previously been unaware that Cunningham had withdrawn, the trial court asked her about the notice that Cunningham had allegedly mailed to the defendant on February 7, 2008. In response, Brian referenced the defendant's testimony that he had not received the notice and then stated the following:

"I believe you also see in your file marked March 5, 2008, is a returned envelope. The Circuit Clerk's mail never got to [the defendant] either. So, I think it's clear from the testimony and from the returned mail that [the defendant] never

19

got any notice of hearing or any notice of his attorney withdrawing and had no idea that was going to be happening at all."

Later, when the trial court again inquired about the notice that "was supposedly mailed on February 7, 2008," Brian stated the following:

"Well, we have to go by his testimony, your Honor, that he never received any letters or any mail or anything, correspondence, from Mr. Cunningham as he testified to. And I just want to point out that [the] letter was returned showing that the Circuit Clerk tried to mail him a letter to what they thought was his address. The same thing could have happened to Mr. Cunningham. He filed a notice. He filed a certificate of service. It could have well been returned to Mr. Cunningham just like the Circuit Clerk's letter was returned."

¶ 44 Although Brian did not specifically point out that the circuit clerk's mailing had not included the defendant's correct inmate number or that the address listed on Cunningham's notice had not included an inmate number at all, both documents were before the court, and the deficiencies are apparent when viewed in light of Brian's arguments. Contrary to the defendant's intimations on appeal, Brian thus used the evidence to corroborate his testimony that he had not received the notice.

¶ 45 We note that the trial court ultimately determined that the defendant's testimony regarding his encounter with Hahn was not credible and that "[f]rom the context and circumstances," it was "apparent to the court" that the defendant had been aware that Cunningham was no longer representing him when he initiated the plea discussions with Hahn. Moreover, although the defendant suggests that his underlying claim "hinged" in

20

part on when he became aware that Cunningham had withdrawn, the relevant inquiry was who had initiated the encounter in the hallway. See *Card*, 188 Ill. App. 3d at 215-16. A defendant who has previously invoked the right to counsel voluntarily waives that right by initiating contact with the State, whether or not he was represented by counsel when the contact was made. See *Montejo*, 556 U.S. at 786; *Michigan v. Harvey*, 494 U.S. 344, 352-53 (1990). Whether the defendant was aware that Cunningham had previously withdrawn was only relevant to his claim that he had felt "abandoned" and "ambushed" when Hahn allegedly approached him and informed him that Cunningham had "quit." Brian used the documents at issue to further that claim, but the trial court obviously rejected the defendant's testimony as self-serving. See *People v. Newbolds*, 194 Ill. App. 3d 539, 542 (1990). Additionally, as indicated, the defendant's constitutional claim hinged on who had initiated the conversation in the hallway, irrespective of whether the defendant was aware that Cunningham had previously withdrawn. Under the circumstances, the defendant is unable to establish either of *Strickland*'s propositions with respect to his assertion that Brian failed to use available evidence to corroborate his testimony regarding Cunningham's notice.

¶ 46          3. *Failure to Call Newlin as a Corroborating Witness*

¶ 47   The defendant asserts that Brian's "most egregious oversight" was her failure to call Newlin as a corroborating witness "despite the fact that he was named in the *pro se* petition and had already provided an affidavit." The defendant intimates that had Newlin testified, there is a reasonable probability that the outcome of the evidentiary hearing would have been different. "Counsel's decision whether to present a particular witness is

21

generally a strategic choice which cannot support a claim of ineffective assistance of counsel" (*People v. Richardson*, 189 Ill. 2d 401, 414 (2000)), however, and the defendant is again unable to satisfy either prong of *Strickland*.

¶ 48    "It is well established that decisions concerning whether to call certain witnesses for the defense are matters of trial strategy left to the discretion of trial counsel." *People v. Banks*, 237 Ill. 2d 154, 215 (2010); see also *People v. Negron*, 297 Ill. App. 3d 519, 538 (1998) ("Decisions concerning which witnesses to call at trial and what evidence to present are matters of trial strategy, and cannot form the basis for a claim of ineffective assistance of counsel unless a strategy is so unsound that counsel can be said to have entirely failed to conduct any meaningful adversarial testing.").  It is strategically sound for counsel to not call a witness whose testimony would be of "questionable value" (*People v. Guest*, 166 Ill. 2d 381, 400 (1995)) or whose testimony could potentially harm a defendant's case (*Marshall*, 375 Ill. App. 3d at 677; *People v. Smado*, 322 Ill. App. 3d 329, 335 (2001); *People v. Peterson*, 248 Ill. App. 3d 28, 41 (1993)).

¶ 49    Here, Newlin and the defendant were fellow inmates in March 2008, and according to the Illinois Department of Corrections' website, Newlin has been convicted of numerous felony offenses in Lawrence County.  See *Rodriguez v. Illinois Prisoner Review Board*, 376 Ill. App. 3d 429, 430 (2007) (noting that a court can take judicial notice of information posted on the Illinois Department of Corrections' official website).  In No. 07-CF-78, he was convicted of attempted burglary; in No. 08-CF-22, he was convicted of domestic battery; in No. 09-CF-85, he was convicted of burglary; in No. 10-

22

CF-158, he was convicted of possession of methamphetamine; and in No. 13-CF-21, he was again convicted of possession of methamphetamine.

¶ 50   "The trial court has discretion to allow a party to impeach a witness with that witness's prior conviction for a felony or other crime involving dishonesty if that conviction, or the witness's release date from prison, was within 10 years." *People v. Collins*, 366 Ill. App. 3d 885, 897 (2006).  "Additionally, the Illinois Supreme Court has found that a defense attorney properly may choose not to interview or call a witness who could be subject to severe impeachment." *Smado*, 322 Ill. App. 3d at 335 (citing *Guest*, 166 Ill. 2d at 400).   With these considerations in mind, not calling Newlin as a corroborating witness was "understandable" and "well within defense counsel's permissible latitude." *Peterson*, 248 Ill. App. 3d at 41.  As a matter of strategy, Brian could have reasoned that Newlin's testimony would have had negligible value or might have backfired to the detriment of the defendant's case.  In any event, "that another attorney with the benefit of hindsight would have proceeded differently" does not demonstrate that Brian's representation was objectively unreasonable.  *Dobbs*, 353 Ill. App. 3d at 827.

¶ 51   The defendant is also unable to demonstrate that there is a reasonable probability that the result of the evidentiary hearing would have been different had Newlin testified. As noted, when denying the defendant's amended petition, the trial court determined that the defendant's version of what had occurred in the hallway outside the courtroom was simply "not credible."  The defendant's intimation that the trial court would have found otherwise had Newlin testified is speculation that is insufficient to establish prejudice

under *Strickland*. *People v. Bew*, 228 Ill. 2d 122, 135 (2008) ("*Strickland* requires actual prejudice be shown, not mere speculation as to prejudice."). We lastly note that the same trial judge presided over all three stages of the defendant's postconviction proceedings, so the trial court was obviously aware of Newlin's affidavit.

¶ 52                          4. *Brian's Rule 651(c) Certificate*

¶ 53    "Supreme Court Rule 651(c) imposes specific obligations on postconviction counsel to assure the reasonable level of assistance required by the Act." *People v. Lander*, 215 Ill. 2d 577, 584 (2005).

> "Rule 651(c) requires that the record show counsel has: (1) consulted with the defendant either by mail or in person to ascertain his claims of deprivation of constitutional rights; (2) examined the record of the trial court proceedings; and (3) made any amendments to the *pro se* petition necessary for an adequate presentation of the defendant's contentions. [Citation.] Compliance with the duties set forth in Rule 651(c) is mandatory [citation], and may be shown by a certificate filed by postconviction counsel. [Citation.] The failure to file a certificate showing compliance with Rule 651(c) is harmless error if the record demonstrates that counsel adequately fulfilled the required duties." *Id*.

¶ 54    In May 2013, approximately a month after the evidentiary hearing, Brian filed a certificate stating the following:

> "I, Abbey M. Brian, Attorney at Law, hereby certify that on November 28, 2012, I was appointed by the Circuit Court of Lawrence County, Illinois[,] to represent the Defendant, JOHN HOTWAGNER, in regard to a Petition for Post-

24

Conviction Relief filed pursuant to 730 ILCS 5/5-8-1 [*sic*], further, I certify that after my appointment on behalf of Defendant in said cause[,] I took numerous actions required by statute. First, Counsel has reviewed all of the contents of the court file and ha[s] investigated the Defendant's contentions of error[,] and, in addition, I have read all transcripts from the sentencing hearing and the appellate court and have personally corresponded with the Defendant by mail and met with the Defendant in person and advised the Defendant as to his legal rights pursuant to both relevant statutes of the State of Illinois relating to Post-Conviction Relief."

¶ 55 On appeal, noting that Brian's certificate fails to affirm that she ever "consulted" with the defendant about his underlying claim, the defendant argues that the certificate fails to demonstrate that Brian complied with the requirements of Rule 651(c). Because the defendant's claim of constitutional deprivation was ascertained long before her appointment, however, there was no need for Brian to have "consulted" with the defendant for purposes of Rule 651(c).

¶ 56 Rule 651(c) recognizes that "[t]o ensure that the complaints of a prisoner might be adequately presented, the [Act] contemplates that the attorney appointed to represent an indigent petitioner will ascertain the basis of the petitioner's complaints, shape those complaints into appropriate legal form[,] and present the prisoner's constitutional contentions to the court." *People v. Johnson*, 154 Ill. 2d 227, 237-38 (1993). However, "Rule 651(c) does not require third-stage counsel to duplicate the efforts of second-stage counsel." *Marshall*, 375 Ill. App. 3d at 683.

25

¶ 57 Here, as evidenced by Hartrich's Rule 651(c) certificate, during the second-stage proceedings, Hartrich "consulted with the [defendant] in person to ascertain his contentions of deprivation of constitutional rights." Hartrich then shaped the defendant's sixth amendment claim into appropriate legal form and filed an amended petition on the defendant's behalf. After the defendant's cause was remanded for an evidentiary hearing, Brian was appointed third-stage counsel. Her role was to argue the merits of the defendant's claim as previously framed by Hartrich. See *Marshall*, 375 Ill. App. 3d at 683. She was not, however, required to consult with the defendant to ascertain the nature of his claim or to file an amended petition on his behalf. See *id.* Those interrelated duties had previously been fulfilled by Hartrich at the second stage. The only remaining Rule 651(c) obligation was that Brian examine the transcript of the trial court proceedings, which, like Hartrich, she certified she had done. We note that Brian also certified that she had corresponded with the defendant by mail and had met with him in person. In November 2013, Brian further filed an itemized list of attorney fees indicating that she had twice conferred with the defendant in person prior to the evidentiary hearing. Any consultation Brian had with the defendant would have pertained to the presentation of his claim, however, not its ascertainment. We further note that Brian's familiarity with the defendant's claim and the court record is apparent from the transcript of the evidentiary hearing.

¶ 58 Lastly, pointing to the certificate's incorrect statutory citation and ambiguous reference to "both relevant statutes," the defendant intimates that Brian's certificate suggests that she was generally incompetent to represent him. The defendant contends

that Brian's certificate indicates "confusion as to the basics of the Act and her role in representing [the defendant]" and "calls into question whether [she] had even a basic knowledge of the Act." In response, the State argues that because Brian "was under no obligation to file a Rule 651(c) certificate at all" (see *Marshall*, 375 Ill. App. 3d at 683 (holding that third-stage counsel was not required to file a Rule 651(c) certificate where second-stage counsel had already met the rule's requirements)), the "scrivener's errors in the certificate from which [the] defendant coaxes his contention that Brian did not understand the Act are therefore irrelevant."

¶ 59    As previously noted, "[t]he failure to file a certificate showing compliance with Rule 651(c) is harmless error if the record demonstrates that counsel adequately fulfilled the required duties." *Lander*, 215 Ill. 2d at 584. It follows that filing a poorly-drafted certificate is harmless error if the record demonstrates that counsel was otherwise competent and fulfilled her required duties. Moreover, "[i]n reviewing a claim of ineffective assistance of counsel, a court must consider defense counsel's performance as a whole and not merely focus upon isolated incidents of conduct." *People v. Max*, 2012 IL App (3d) 110385, ¶ 65.

¶ 60    Here, Brian's certificate suggests that it was drafted from or based on a previously filed certificate from a case involving a sentencing issue. It further suggests that in light of what Hartrich had already done as second-stage counsel, Brian was uncertain as to what she needed to certify. As discussed above, the only Rule 651(c) requirement that was arguably relevant under the circumstances was that she examine the transcript of the trial court proceedings. She indicated, however, that in addition to familiarizing herself

27

with the transcript and the court file, she had investigated the defendant's claim, had met and corresponded with him, and had advised him as to certain rights. Although somewhat cryptic, Brian's certificate cannot be deemed dispositive proof that she was confused about her role or lacked a basic understanding of the Act. Moreover, Brian competently presented and argued the defendant's sixth amendment claim at the evidentiary hearing and thus fulfilled her third-stage obligation. Thus, even assuming that Brian needed to file a Rule 651(c) certificate, we find that the certificate's errors that the defendant emphasizes on appeal are harmless under the circumstances and do not support his contention that he was denied the reasonable level of assistance required under the Act. *Cf. Kelly*, 2012 IL App (1st) 101521, ¶¶ 31, 32, 40 (holding that postconviction counsel failed to provide a reasonable level of assistance where counsel failed to cite "controlling Supreme Court precedent," failed to present the defendant's arguments in appropriate legal form, allowed the defendant's petition to languish for years, and made comments indicating that counsel "either lacked basic knowledge of the Act or fundamentally misunderstood it").

¶ 61                                III. CONCLUSION

¶ 62    We reject the defendant's argument that his cause must be remanded for a new evidentiary hearing with new postconviction counsel because Brian failed to provide him with the reasonable level of assistance required under the Act. That another attorney with the benefit of hindsight would have handled the case differently does not establish that her representation was deficient. See *Dobbs*, 353 Ill. App. 3d at 827. Further, we again note that the trial court's denial of the defendant's amended petition ultimately turned on

28

its determination that the defendant was not credible. For the foregoing reasons, the trial court's judgment is hereby affirmed.

¶ 63    Affirmed.

2015 IL App (5th) 130525

NO. 5-13-0525

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Lawrence County. |
| | ) | |
| v. | ) | No. 07-CF-152 |
| | ) | |
| JOHN HOTWAGNER, | ) | Honorable |
| | ) | Robert M. Hopkins, |
| Defendant-Appellant. | ) | Judge, presiding. |

**Opinion Filed:**     October 22, 2015

**Justices:**     Honorable S. Gene Schwarm, J.

Honorable Judy L. Cates, P.J., and
Honorable Richard P. Goldenhersh, J.,
Concur

**Attorneys
for
Appellant**     Michael J. Pelletier, State Appellate Defender, Ellen J. Curry, Deputy
Defender, Maggie A. Heim, Assistant Appellate Defender, Office of
the State Appellate Defender, Fifth Judicial District, 909 Water Tower
Circle, Mt. Vernon, IL 62864

**Attorneys
for
Appellee**     Hon. Christopher M. Quick, State's Attorney, Lawrence County
Courthouse, Courthouse Square, Lawrenceville, IL 62439, Patrick
Delfino, Director, Stephen E. Norris, Deputy Director, Jennifer
Camden, Staff Attorney, Office of the State's Attorneys Appellate
Prosecutor, 730 East Illinois Highway 15, Suite 2, P.O. Box 2249, Mt.
Vernon, IL 62864