# Illinois Official Reports

## Appellate Court

---

### *People v. Miller*, 2017 IL App (3d) 140977

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RYAN A. MILLER, Defendant-Appellant. |
| District & No. | Third District<br>Docket No. 3-14-0977 |
| Rule 23 order filed | February 28, 2017 |
| Rule 23 order modified upon denial of rehearing | April 5, 2017 |
| Motion to publish allowed | June 5, 2017 |
| Opinion filed | June 5, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Rock Island County, No. 05-CF-959; the Hon. Walter D. Braud, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael J. Pelletier, Peter A. Carusona, and Mark D. Fisher, of State Appellate Defender's Office, of Ottawa, for appellant.<br><br>John L. McGehee, State's Attorney, of Rock Island (Justin A. Nicolosi, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |

Panel                    JUSTICE SCHMIDT delivered the judgment of the court, with opinion.

Justices O'Brien and Wright concurred in the judgment and opinion.

## OPINION

¶ 1      On September 29, 2006, a jury convicted defendant of first degree murder for which he originally received a mandatory natural life sentence. He later pursued relief on numerous claims of constitutional violations under the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2008)). Some of defendant's claims were dismissed at the second-stage dismissal hearing while others proceeded to a third-stage evidentiary hearing. The trial court granted a new sentencing hearing but no other relief. At the resentencing hearing, defendant received 60 years' imprisonment, the maximum sentence for his crime. 730 ILCS 5/5-4.5-20(a) (West 2014).

¶ 2      Defendant raises three issues on appeal in relation to his postconviction petition. First, he appeals the claims dismissed at the second stage because the State captioned its responsive pleading as an answer, not a motion to dismiss. Next, defendant argues that we should remand for additional postconviction proceedings due to postconviction counsel's unreasonable level of assistance at the evidentiary hearing. Finally, he claims he is entitled to a new trial based upon ineffective assistance of trial and appellate counsel in failing to submit jury instructions on lesser-included offenses. In addition to his postconviction claims, defendant directly appeals the 60-year sentence imposed at his resentencing hearing, arguing that the trial court abused its discretion by levying an excessive sentence. We affirm.

¶ 3                                  BACKGROUND

¶ 4      On November 7, 2005, defendant, then 22 years old, was babysitting the 17-month-old daughter of his girlfriend, Ashley, after Ashley went to work at 3:30 p.m. At approximately 5 p.m., defendant sought his neighbor's help because the infant was vomiting and stopped breathing. The neighbor, Greg, followed defendant to the apartment where the infant was unresponsive. Greg immediately called 911 on his cell phone. At some point between 5 and 5:30 p.m., defendant used another neighbor's phone to call Ashley at work.

¶ 5      When the paramedics arrived, the infant was not breathing. The paramedics' heart monitor detected no electrical activity; revival efforts on the way to the hospital were unsuccessful. The victim's body temperature in the emergency room was 91.9 degrees, indicating she had been dead for at least one hour prior to arriving at the hospital between 5:30 and 6 p.m.

¶ 6      Defendant initially told the police investigator that the victim was coughing, vomiting, and breathing "funny." He stated that only two minutes elapsed between him noticing something was wrong and his neighbor calling 911. After the investigator confronted defendant with the victim's 91.9-degree body temperature and estimated time of death, he changed his story.

¶ 7      In his amended version, defendant claimed the victim broke a television antenna after her mother left for work. He then grabbed her and spanked her "harder than he should have."

After spanking her, he grabbed her by both arms, shook her, and threw her onto the living room couch. When the victim attempted to crawl off of the couch, defendant threw her back onto it, pushed her head into the cushion, and told her to go to sleep. As she kept trying to get up, defendant admitted he pushed her head down "countless times" until she began to quiver and vomit. When the victim stopped crawling off the couch, defendant covered her with a blanket, placed a cup beside her, and went elsewhere in the apartment to write music lyrics. He did not realize the victim was unresponsive until about one hour later.

¶ 8    The victim had bruising about her head and face, behind her ear, on the left side of her abdomen, and on her lower back. The victim's emergency room physician stated that some of the bruises were linear, indicating they could have been caused by a straight instrument or falling against a straight edge of some sort. The forensic pathologist determined the victim died from hemorrhagic shock resulting from a transected liver—a liver split into two pieces. This type of injury could result only from significant blunt trauma of the abdomen, similar to that experienced in severe automobile accidents. The pathologist also opined that two linear bruises on the left side of the victim's torso were caused by force from a long, cylindrical object, such as an antenna. The two contusions on the victim's back were caused by blunt trauma with a hard object. The autopsy also revealed hemorrhaging beneath the victim's scalp.

¶ 9    Soon after defendant was charged with first degree murder, the trial court found a *bona fide* doubt as to his fitness to stand trial. The court appointed Dr. Kirk Witherspoon to evaluate his mental capacity. On November 18, 2005, Witherspoon's evaluation concluded that defendant was unfit for trial due to extreme distress and suicidal thoughts. He believed, however, that defendant could be restored to fitness within a year. On January 6, 2006, Witherspoon reevaluated defendant at his own request. Witherspoon found that defendant displayed the cognitive ability to understand the charges against him and implications of proceeding with trial. Accordingly, Witherspoon recommended that defendant was fit for trial; the trial court found defendant fit on January 25, 2006.

¶ 10    On September 25, 2006, defense counsel advised the court that defendant was taking psychotropic medications but indicated that these medications would not affect his fitness for trial. Although defendant was charged with other crimes, the State proceeded on only the first degree murder charge. After jury selection on September 25 and 26, the three day trial began on September 27, 2006.

¶ 11    On the first day of trial, the jury sent the judge a note asking if defendant was "on medication to calm him." The attorneys and trial court knew that defendant was taking Seroquel, a psychotropic medication. Prior to submitting the note, the jury heard testimony from the victim's mother, an investigating police officer, and the emergency room physician. The State published postmortem photographs of the victim during some of the testimony. The record does not indicate what, if any, event or behavior prompted the jury's note. Outside of the jury's presence, the attorneys and trial judge agreed that the court would not answer the jury's question. The trial judge stated that he noticed nothing unusual about defendant's demeanor. He also observed that defendant could appear calm for a variety of reasons.

¶ 12    After deliberating for approximately four hours on the second day of trial, the trial judge granted the jury's request to adjourn for the evening. At 10:54 a.m. the next day, the judge

allowed the jury's request to see the videotape of defendant's police interrogation. The jury returned its verdict at 3:26 p.m.

¶ 13    The presentence investigation revealed that defendant had little criminal history—juvenile offenses for property damage and burglary in 1997 and cannabis charges in 2003 and 2005. Defendant abused several types of drugs; he admitted that he drank an eight-ounce bottle of Robitussin on the day of the offense. Treatment Alternatives for Safe Communities (TASC) submitted an evaluation letter, which concluded that defendant's cannabis and cocaine dependence was correlated to the offense. However, defendant was not eligible for TASC treatment alternatives because of the crime's violent nature. Defendant also wrote a letter expressing his remorse, stating he would have never intentionally hurt or killed the victim.

¶ 14    On December 15, 2006, the court heard and denied defendant's motion for a new trial. The court sentenced defendant to the mandatory natural life imprisonment under section 5-8-1(a)(1)(c)(ii) of the Unified Code of Corrections (Unified Code) (730 ILCS 5/5-8-1(a)(1)(c)(ii) (West 2006)). We rejected defendant's reasonable doubt argument on direct appeal and affirmed his conviction by Rule 23 order. *People v. Miller*, 385 Ill. App. 3d 1144 (2008) (table) (unpublished order under Supreme Court Rule 23). Defendant raised no other issues on direct appeal.

¶ 15    On October 22, 2009, defendant filed a *pro se* petition for postconviction relief, which raised 28 separate issues. The trial court appointed counsel to represent defendant on February 3, 2010. On April 26, 2011, defendant filed a *pro se* amended petition, arguing his mandatory life sentence was unconstitutional under *People v. Wooters*, 188 Ill. 2d 500 (1999). The section of the Unified Code under which defendant received his mandatory life sentence was amended as of January 1, 2016. See Pub. Act 99-69, § 10 (eff. Jan. 1, 2016) (amending 730 ILCS 5/5-8-1(a)(1)(c)(ii) to remove the mandatory sentence of natural life imprisonment for murder of an individual under 12 years of age).

¶ 16    On September 13, 2013, defense counsel filed a Rule 651(c) certificate (Ill. S. Ct. R 651(c) (eff. Feb. 6, 2013)) and amended petition arguing, *inter alia*, (1) his sentence was improper under *Wooters*; (2) his due process rights were violated when the trial court failed to order a new fitness hearing after his psychotropic medications were changed and his actions at trial created a doubt as to his fitness; (3) his appellate counsel provided ineffective assistance by (a) failing to argue on direct appeal that trial counsel provided ineffective assistance by not requesting the jury to be instructed on involuntary manslaughter or reckless homicide and (b) failing to argue on direct appeal that the cumulative effect of the prosecutor's "misconduct" denied defendant a fair trial; (4) his trial counsel provided ineffective assistance by (a) failing to request the jury be instructed on second degree murder, involuntary manslaughter, and reckless homicide, (b) waiving the court reporting of *voir dire*, thereby precluding appellate counsel from raising any issues that may have arisen therein, and (c) failing to object to the prosecutor's "numerous improper remarks" that were not based in evidence and served only to inflame the passion of the jury; and (5) his sixth amendment right to a fair and impartial trial by jury was violated when (a) the trial court denied defense counsel's request for individual *voir dire*, (b) the trial court denied defense counsel's *Batson* challenge to the jury array, (c) the prosecution made numerous improper remarks not based on evidence and meant only to inflame the passion of the jury, and (d) the

State failed to disclose to defense counsel an audio recorded conversation between the victim's mother and defendant.

¶ 17 On April 3, 2014, the postconviction trial court discharged defendant's counsel, at defendant's request, and ordered the State to respond to the amended petition. The State filed an "answer," which conceded that defendant was entitled to a new sentencing hearing. The State's responsive pleading asserted that defendant's other claims did not merit an evidentiary hearing. With regard to the claims that were ultimately dismissed at the second stage, the State's responsive pleading asserted: "Petitioner next alleges a laundry list of alleged errors by trial counsel, but does not allege why they were errors or how these alleged errors would have affected the outcome of the case, nor are there affidavits supporting the assertion."

¶ 18 At the dismissal hearing, the court found that defendant was entitled to a new sentencing hearing and an evidentiary hearing on the claims concerning his fitness and his attorneys' failure to request jury instructions on lesser-included offenses. The remaining issues were dismissed.

¶ 19 At the evidentiary hearing, defendant testified that he asked his trial counsel to investigate the viability of a voluntary manslaughter instruction prior to trial but never discussed jury instructions with counsel during trial. He also took Seroquel during trial, which made him feel "completely out of his mind," "weird," and unable to focus. The medication made him feel as though he were in a dream. He felt much better after he was taken off the medication in prison.

¶ 20 The presiding trial judge testified that defendant's demeanor appeared normal during trial. His communications with the court and his counsel appeared normal. The judge saw nothing indicating a *bona fide* doubt of his fitness. When questioned by defendant's postconviction counsel, the trial judge did not recall any discussion about lesser-included offenses or a note from the jury asking about defendant's medication during trial.

¶ 21 Both of defendant's trial attorneys also testified at the evidentiary hearing. Neither attorney noticed anything in defendant's behavior to indicate a *bona fide* doubt of his fitness or any adverse effects from the medication. Lead defense attorney, Baron Heintz, did not recall a note from the jury asking about defendant's medication. Heintz testified that he and defendant discussed the possibility of lesser-included offense instructions. Heintz told defendant that he may have to testify in order to prove a lesser-included offense; defendant responded that he had done nothing wrong and did not want to testify.

¶ 22 After the evidentiary hearing, the trial court ordered a new sentencing hearing but denied all other relief. The court concluded that defendant's testimony regarding his medication was insufficient to show a *bona fide* doubt of his fitness at trial. The court also determined that defendant pursued an all-or-nothing approach by choosing not to testify or allow the jury to consider lesser-included offenses. Accordingly, the court ruled that defendant failed to make a substantial showing of a constitutional violation on the remaining two issues.

¶ 23 Defendant's second presentence report indicated that he was singing in the choir, as well as taking parenting, Bible, and art classes in prison. Four letters written on defendant's behalf were attached to the report. Also attached to the report were several certificates recognizing various accomplishments he achieved in prison. Defendant also wrote a letter on his own behalf and exercised his right of allocution to express remorse for his actions. He indicated that he was high on drugs, young, and reckless when he committed the crime. He maintained

that he had been rehabilitated while in prison and would not commit another crime. He also asked for leniency on behalf of his 12-year-old daughter.

On March 16, 2015, defendant received the maximum sentence of 60 years' imprisonment. The sentencing court indicated that defendant's poor upbringing and lack of prior record might be helpful in some cases but found this case to present unforgiveable circumstances. The court also noted that defendant's letter and statements expressed sentiments that fell short of remorse for his crime. On May 22, 2015, the court denied defendant's motion to reconsider the sentence.

Defendant directly appeals his 60-year sentence and appeals the trial court's rulings denying relief on his postconviction petition. We affirm the trial court's determinations.

ANALYSIS

I. The State's Second Stage Responsive Pleading

Defendant argues that by the State captioning its responsive pleading as an answer rather than a motion to dismiss, the trial court had no authority to dismiss any of defendant's postconviction claims. The State combats defendant's argument by pointing out that it did not concede the dismissed issues in the responsive pleading. Although captioned as an answer, the substance of the pleading sought dismissal of defendant's claims. We review the dismissal of postconviction claims at the second stage *de novo*. *People v. Whitfield*, 217 Ill. 2d 177, 182 (2005); *People v. Brown*, 2015 IL App (1st) 122940, ¶ 44.

To advance beyond the second stage, a postconviction petition and any accompanying documentation must make a "substantial showing" of a constitutional violation. *People v. Edwards*, 197 Ill. 2d 239, 246 (2001); *People v. Wilson*, 2013 IL App (1st) 112303, ¶ 15. In other words, the burden of proof is on the petitioner. The State's failure to file a responsive pleading captioned as a motion to dismiss does not mandate an evidentiary hearing on all issues. First, trial courts can, but are not required to, recharacterize postconviction pleadings. See *People v. Stoffel*, 239 Ill. 2d 314 (2010). In fact, the only constraint imposed on a trial court during the dismissal stage is that it must accept all well-pled facts as true. *People v. Coleman*, 183 Ill. 2d 366, 380-81 (1998). Second, it is well-settled that the substance of a pleading, not its caption, identifies its nature. See, *e.g.*, *Shutkas Electric, Inc. v. Ford Motor Co.*, 366 Ill. App. 3d 76, 81 (2006).

Here, the State conceded the sentencing claim pled in defendant's petition but challenged the validity of all other claims. To support these challenges, the State's pleading made assertions attacking the sufficiency of defendant's pleadings. Two claims that the State challenged, defendant's fitness and jury instructions on lesser-included offenses, advanced to the third stage. The State's responsive pleading asserted that the petition's "laundry list" of other claims failed to allege "why they were errors," failed to specify the prejudicial effect of any such error, and failed to provide any affidavits in support of the claims. At the dismissal hearing, the State argued for the dismissal of all claims except for the sentencing claim. The trial judge identified the claims that did not proceed to evidentiary hearing as trial issues that should have been raised on direct appeal. See *People v. English*, 2013 IL 112890, ¶ 22 (postconviction proceedings are meant to adjudicate constitutional issues that were not, and could not have been, previously addressed); *People v. Ligon*, 239 Ill. 2d 94, 103 (2010) (issues that could have been raised on direct appeal but were not are forfeited).

¶ 31 Defendant relies heavily on *People v. Thompson*, 2016 IL App (3d) 140586. In *Thompson*, the court sentenced the defendant, convicted of two counts of first degree murder, to 60 years. The trial judge ordered that the two counts be merged into one conviction—defendant had one 60-year sentence, not 60 years for each count. Due to a clerical error, the sentencing order stated the defendant was to serve two 60-year sentences concurrently. The defendant's *pro se* petition alleged fourth amendment claims regarding his arrest and holding period prior to his probable cause hearing. Through counsel, his amended petition raised only sentencing issues—that the sentencing order incorrectly issues two 60-year sentences and that the trial judge based the sentence on a personal belief that the defendant was a threat to society who did not deserve mercy. The amended petition also incorporated the " 'arguments contained within and the Affidavits attached to [defendant's] *pro se* Petition for Post-Conviction Relief.' " *Id.* ¶ 6. The defendant then filed a *pro se* "Supplemental Amended Post-Conviction Petition" in which he alleged ineffectiveness of trial counsel for failing to claim that the defendant was held too long prior to his probable cause hearing, ineffectiveness of trial counsel for failing to object to photographic lineups at the suppression hearing, and arguing that section 109-1(a) of the Code of Criminal Procedure of 1963 (725 ILCS 5/109-1(a) (West 2006)) was unconstitutional "in that it was vague and ambiguous and provided no remedy for noncompliance." *Thompson*, 2016 IL App (3d) 140586, ¶ 8.

¶ 32 The *Thompson* postconviction trial court stated it would consider the defendant's *pro se* claims even though his counsel did not explicitly adopt them in the amended petition. Neither party presented any evidence at the second-stage dismissal hearing. The State never filed a responsive pleading prior to the hearing. After the court ruled against the defendant, his counsel filed a notice of appeal while the defendant filed a *pro se* motion to reconsider. This court dismissed the appeal and ordered the trial court to rule on the motion to reconsider. At the subsequent hearing, the court ordered the State to file a responsive pleading. The State filed an answer admitting that the clerical error in the sentencing order required modification and admitting that the sentencing judge made the alleged statements. However, the State argued that the judge's statements were reasonable and supported by the evidence within the context of the case. The trial court affirmed its previous determination.

¶ 33 On appeal, this court rejected the State's argument that the trial judge must make an independent determination at the second-stage dismissal hearing regardless of whether the State filed a motion to dismiss. *Id.* ¶ 21. Further, this court held that the failure to concede allegations in a postconviction petition does not transform an answer into a motion to dismiss—the effect of a denial in an answer is to "frame the scope of the dispute to be resolved at an evidentiary hearing." *Id.* ¶ 26. *Thompson* does not hold that a responsive pleading captioned as an "answer," in and of itself, entitles a defendant to an evidentiary hearing on all allegations raised in a postconviction petition.

¶ 34 In the instant case, unlike in *Thompson*, the State's responsive pleading was filed prior to the second-stage dismissal hearing and addressed all of defendant's postconviction claims. Also unlike *Thompson*, the State's responsive pleading contains numerous assertions that do not admit or deny the facts pled. Instead, most of the State's pleading attacks the sufficiency of defendant's claims. With regard to the dismissed claims, the State's answer asserted that defendant failed to adequately plead a constitutional violation or provide any affidavits in

support of the claims. " 'A motion to dismiss *** attacks the sufficiency of the complaint.' " *Id.* ¶ 25 (quoting *Tyler v. J.C. Penny Co.*, 145 Ill. App. 3d 967, 972 (1986)).

¶ 35　　The parties appeared for a dismissal hearing to argue the viability of defendant's pleadings. Based on the pleadings and the parties' positions at the hearing, the trial court dismissed many of defendant's claims. We find that the State's responsive pleading, in substance, sought dismissal of these claims—it did not merely admit or deny material facts. The trial court was empowered to dismiss defendant's claims. We affirm the trial court's judgment.

¶ 36　　　　　　　II. Ineffective Assistance of Postconviction Counsel

¶ 37　　Defendant next contends that postconviction counsel failed to provide reasonable assistance. He claims counsel failed to properly amend some of the *pro se* petition claims, failed to bolster defendant's testimony at the evidentiary hearing with documentary evidence, and failed to rebut adverse testimony at the evidentiary hearing with citations to the record. In his brief, defendant argues that counsel unreasonably failed to provide the trial court with a recorded conversation between defendant and the victim's mother, which resulted in the dismissal of his discovery violation claim. Defendant also claims that postconviction counsel pled the discovery violation claim inadequately. Defendant's brief also highlights counsel's failure to provide the trial court with hard evidence to the side effects of Seroquel, a psychotropic medication defendant took during trial. He claims the drug's side effects rendered him unfit for trial. We affirm the trial court's dismissals.

¶ 38　　　　　　　　　　A. Discovery Violation Claim

¶ 39　　It is undisputed that the State failed to disclose a recorded conversation between defendant and the victim's mother. Defendant filed a motion to supplement his postconviction petition in November 2014; he attached to this motion a police report prepared on November 17, 2005. The reporting investigator described bringing the victim's mother to the police station and leaving her alone to talk with defendant. They consented to the conversation being video and audio recorded. The investigator noted on the report that the "conversation was difficult to discern on the audio and video recording."

¶ 40　　First, defendant argues that the discovery violation could not have been addressed on direct appeal because it was not part of the appellate record. However, defendant consented to his conversation with the victim's mother being recorded; therefore, he certainly knew of its existence. Additionally, the November 17, 2005, report was disclosed—the recorded conversation was no secret to anyone. Defendant could have raised the issue at trial to make it part of the appellate record, but he failed to do so.

¶ 41　　Moreover, discovery violation claims require the defendant to prove three elements: (1) that the evidence is favorable to the accused because it is either exculpatory or impeaching, (2) the evidence was suppressed by the State, and (3) the accused was prejudiced because the evidence is material to his guilt or punishment. *People v. Beaman*, 229 Ill. 2d 56, 73-74 (2008); see also *Brady v. Maryland*, 373 U.S. 83, 87-88 (1963); *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). Defendant merely argues that postconviction counsel's inclusion of the discovery violation claim in defendant's amended petition required him to produce the

conversation. The State responds by pointing out that the recording was "difficult to discern" and carried little probative value.

¶ 42 We agree with the State. The briefs imply that postconviction counsel had access to the recorded conversation, so defendant's appellate counsel also has access to the recording. In any event, defendant knows the gist of what the conversation entailed. Yet, neither defendant's briefs nor his petition for rehearing explains how the substance of the recording would be material or show that defendant was prejudiced by the State's nondisclosure, as he must to prove his discovery violation claim. If the recording does not contain exculpatory or impeaching evidence that is material to defendant's guilt or innocence, then postconviction counsel's omission cannot be unreasonable—it is not unreasonable to omit evidence that does not help your client's case. See *People v. Ross*, 2015 IL App (3d) 130077, ¶ 14 ("Where a defendant alleges unreasonable assistance of postconviction counsel, the prejudice prong focuses on whether counsel's deficient performance affected the outcome of the postconviction proceedings.").

¶ 43 ## B. Fitness Claim

¶ 44 The remaining issue focuses on counsel's failure to provide evidence of defendant's unfitness to stand trial due to side effects from his prescribed psychotropic medication, Seroquel. At the evidentiary hearing, defendant testified that the Seroquel made him feel "weird" and confused. He claimed he was unable to understand the proceedings at trial or assist in his defense. Defendant's postconviction counsel did not provide the trial court with any literature on Seroquel or its side effects. Defendant also claims that the jury note asking whether defendant was prescribed medication to calm him was important evidence calling his fitness into question. Neither the trial judge nor defendant's trial counsel recalled the note or defendant's behavior raising a *bona fide* doubt as to his fitness. Defendant contends that his counsel's failure to produce the trial record to refresh the witness's recollection amounted to unreasonable assistance. He claims producing the record would have enhanced his credibility, perhaps leading to a different result.

¶ 45 The State argues that defendant's counsel met the statutory burden of reasonable assistance. Further, the State contends that defendant's counsel fairly presented a case on the issues raised in defendant's petition; therefore, counsel's assistance was not unreasonable. Additionally, the State points out that the jury note was addressed at trial, where neither the trial judge nor defendant's trial counsel found any indication he was unfit.

¶ 46 Because there is no constitutional right to counsel in postconviction proceedings, Illinois Supreme Court Rule 651(c) (eff. Feb. 6, 2013) governs the level of assistance required of postconviction counsel. Under this rule, postconviction counsel is required to provide a reasonable level of assistance. *People v. Pendleton*, 223 Ill. 2d 458, 472 (2006). To demonstrate reasonable assistance, Rule 651(c) requires postconviction counsel to file a certificate verifying that he or she "consulted with petitioner by phone, mail, electronic means or in person to ascertain his or her contentions of deprivation of constitutional rights, has examined the record of the proceedings at the trial, and has made any amendments to the petitions filed *pro se* that are necessary for an adequate presentation of petitioner's contentions." Ill. S. Ct. R. 651(c) (eff. Feb. 6, 2013). Whether postconviction counsel satisfied the Rule 651(c) obligations is a question we review *de novo*. *People v. Suarez*, 224 Ill. 2d 37, 41-42 (2007).

¶ 47    The purpose of Rule 651(c) is to ensure that postconviction counsel presents the defendant's claims to the court in proper legal form. *People v. Perkins*, 229 Ill. 2d 34, 44 (2007). Substantial compliance with the rule is sufficient. *People v. Richardson*, 382 Ill. App. 3d 248, 257 (2008). The filing of a Rule 651(c) certificate creates a rebuttable presumption that postconviction counsel provided reasonable assistance. *People v. Profit*, 2012 IL App (1st) 101307, ¶ 19. Once a certificate is filed, it is defendant's burden to overcome this presumption by demonstrating his attorney's failure to substantially comply with the duties mandated by Rule 651(c). *People v. Jones*, 2011 IL App (1st) 092529, ¶ 23.

¶ 48    Further, in reviewing the effectiveness of counsel, we must evaluate counsel's performance as a whole; we do not view isolated incidents in a vacuum. *People v. Max*, 2012 IL App (3d) 110385, ¶ 65. Counsel is not required to call every witness or bolster every claim with evidence or testimony at a postconviction evidentiary hearing. See *People v. Hotwagner*, 2015 IL App (5th) 130525, ¶¶ 41-51. Instead, postconviction counsel's obligation at an evidentiary hearing is to competently present the defendant's claims as framed by the petition. See *id.* ¶¶ 57-60.

¶ 49    Here, the crux of defendant's argument is that postconviction counsel's failure to provide documentation of Seroquel's side effects and produce the trial record during witness examination was an unreasonable omission of evidence tending to prove defendant's unfitness. First, we find that counsel's failure to provide the trial court with literature on the side effects of Seroquel did not amount to unreasonable assistance. A list of Seroquel's side effects has almost no probative value in this case; the drug's actual effect on defendant at trial is the relevant issue, not the potential side effects of the medication.

¶ 50    Nonetheless, defendant argues that some of Seroquel's side effects—confusion, dizziness, and drowsiness—rendered him unfit for trial. Over-the-counter ibuprofen and acetaminophen also list dizziness and drowsiness as side effects. Moreover, numerous prescription drugs list confusion as a side effect—narcotic pain medications and antihistamines for example. A list of Seroquel's side effects says nothing about defendant's state of mind at trial. Defendant's argument places undue emphasis on the fact that Seroquel is a psychotropic medication. A defendant's ingestion of psychotropic medication does not, by itself, give rise to a *bona fide* doubt of his fitness to stand trial. *People v. Mitchell*, 189 Ill. 2d 312, 330-31 (2000).

¶ 51    Defendant further contends that, in correlation with the Seroquel literature, the trial record regarding the jury's note would have shown the medication affected his demeanor. Specifically, defendant argues that postconviction counsel failed to present the trial record concerning the jury's note when the trial judge and defendant's trial counsel did not remember the note. We disagree.

¶ 52    The jury submitted the note on the first day of trial; it asked whether defendant was on medication to calm him. Prior to submitting the note, the jury heard testimony from the victim's mother, a police investigator, and the victim's emergency room treating physician. During the course of this testimony, the jury saw postmortem photographs of the victim.

¶ 53    In determining whether to answer the jury's question, the trial judge stated: "I have noted nothing really unusual regarding the defendant's demeanor today." The judge and counsel knew defendant was on medication but agreed the court could not answer the jury's question. The court also recognized that defendant could be calm for various reasons. Accordingly, the court had no basis on which to question defendant's fitness.

- 10 -

¶ 54      Defendant now argues that the jury's note was prompted by some event or defendant's unusual behavior, showing the Seroquel affected his mental capacity. The record makes no such indication. For defendant's argument to succeed, we must speculate that he exhibited behavior or a demeanor, seen only by the jury, which raised a *bona fide* doubt as to his fitness. We must also speculate that the note was *not* prompted by the jurors' reactions or expectations of defendant after seeing postmortem photographs of the victim and hearing her mother's testimony. We decline to make such speculative leaps to create facts not contained within the record.

¶ 55      The trial record of the proceedings addressing the jury's note at trial confirms the uncontested fact that defendant was taking medication during the trial—a scant amount of probative evidence without employing speculation. On the other hand, the record also highlights the trial court's conclusion that defendant appeared normal and his trial counsel's failure to raise any argument that defendant was unfit. The record contains no evidence that the witnesses would have interpreted their trial observations differently at an evidentiary hearing eight years later. Perhaps not producing the trial record was a calculated strategy to limit its potentially negative effect on defendant's case. Regardless, the record before us is devoid of the facts necessary to support defendant's argument. We cannot say that counsel's omission of the trial record, the documentation on Seroquel, or both omissions taken together failed to meet the Rule 651(c) reasonableness standard. Accordingly, we affirm the trial court's ruling and decline to remand for further postconviction proceedings.

¶ 56                     III. Lack of Jury Instructions on Lesser-Included Offenses

¶ 57      Defendant next claims that his trial counsel failed to investigate potential lesser-included offenses and erroneously advised defendant that he would have to testify in order to instruct the jury on these offenses. He argues that his appellate counsel was ineffective for not raising this issue on direct appeal.

¶ 58      This claim proceeded to a third-stage evidentiary hearing. The trial court concluded that defendant desired an all-or-nothing approach because he did not believe he was guilty. The State argues that the trial court's determination was sufficiently supported by the evidence.

¶ 59      At a postconviction evidentiary hearing, the defendant bears the burden of presenting evidence establishing a substantial showing of a constitutional violation. *People v. Coleman*, 206 Ill. 2d 261, 277 (2002). The trial judge serves as the fact finder charged with determining witnesses' credibility and the weight to be given to their testimony and resolving any conflicts in the evidence. *People v. Chatman*, 357 Ill. App. 3d 695, 704 (2005). Reviewing courts may not substitute their judgment for the trial courts' and will not reverse the decision unless it is "clearly evident, plain, and indisputable that the decision was erroneous." *Id.* To be "manifestly erroneous," a trial court's decision must be "arbitrary, unreasonable and not based on the evidence." *People v. Wells*, 182 Ill. 2d 471, 481 (1998).

¶ 60      Defendant testified that he did not discuss lesser-included offenses with his trial counsel and did not understand he could submit jury instructions on charges the State did not pursue. However, his trial counsel, Baron Heintz, testified that he discussed jury instructions on lesser-included offenses with defendant after the State presented its case. Heintz told defendant that he may need to testify to prove a lesser-included offense; defendant declined to testify. Heintz also explained to defendant that requesting lesser-included offense instructions may cause the jury to "split the difference." In other words, leaving one charge

instruction may be strategically advantageous because the jury has fewer charges upon which to convict the accused.

¶ 61     The trial court determined that the totality of the evidence presented indicated defendant took an intentional all-or-nothing approach. The court found Heintz's testimony credible and concluded it was defendant's wish to proceed without the lesser-included offense instructions. These facts do not indicate ineffective assistance of defendant's trial or appellate counsel. Accordingly, the trial court found that defendant failed to make the required substantial showing. The totality of the evidence presented at the hearing supports the trial court's determination. We affirm.

¶ 62     IV. Sentencing

¶ 63     Finally, defendant argues that his sentence was excessive in light of his rehabilitative potential, the limited risk of recidivism, and the mitigating factors presented to the trial court. The State counters by highlighting the underlying facts of the crime and pointing out that defendant's 60-year sentence fell within the applicable sentencing range. 730 ILCS 5/5-4.5-20(a) (West 2014). Defendant was originally sentenced to a mandatory natural life term under section 5-8-1(a)(1)(c)(ii) of the Unified Code. 730 ILCS 5/5-8-1(a)(1)(c)(ii) (West 2006). This sentence was deemed unconstitutional and later removed from the statute. See Pub. Act 99-69, § 10 (eff. Jan. 1, 2016); *Wooters*, 188 Ill. 2d 500. The trial court imposed the 60-year sentence at issue here at a second sentencing hearing. Accordingly, we examine this issue as a direct appeal.

¶ 64     The trial court's sentencing decision is entitled to great deference and will not be disturbed absent an abuse of discretion. *People v. Latona*, 184 Ill. 2d 260, 272 (1998); *People v. Perruquet*, 68 Ill. 2d 149, 153 (1977). The trial court is in a far better position than the appellate court to issue an appropriate sentence based upon its firsthand consideration of relevant factors such as the defendant's credibility, demeanor, moral character, mentality, social environment, habits, and age. *People v. Streit*, 142 Ill. 2d 13, 19 (1991) (citing *Perruquet*, 68 Ill. 2d at 154). When reviewing courts examine the propriety of trial courts' sentences, they should proceed with great caution and care. *People v. Harper*, 50 Ill. 2d 296, 301 (1972). Accordingly, a reviewing court may not substitute its judgment for that of a trial court merely because it would have weighed sentencing factors differently. *People v. Pittman*, 93 Ill. 2d 169, 178 (1982).

¶ 65     In the instant case, defendant stands convicted of murdering a 17-month-old infant. The mitigating factors presented—defendant's lack of prior violent crimes, troubled upbringing, age, rehabilitative potential, and drug dependency related to the murder—do not render defendant immune from a maximum sentence. The trial judge clearly weighed these factors—he stated on the record that they were insufficient to overcome the nature of the crime. The judge also determined that defendant fell short of expressing true remorse for his actions. Defendant is asking this court to reweigh the sentencing factors, which we cannot do by law. See *id.* We find no abuse of the trial court's discretion in imposing the maximum 60-year sentence.

¶ 66     CONCLUSION

¶ 67     For the foregoing reasons, we affirm the judgment of the circuit court of Rock Island County as to all issues raised in this appeal.

¶ 68        Affirmed.