NOTICE
Decision filed 08/14/20. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2020 IL App (5th) 170056-U

NO. 5-17-0056

IN THE

NOTICE
This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 05-CF-1094 |
| | ) | |
| JON CEARLOCK, | ) | Honorable |
| | ) | Zina R. Cruse, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE CATES delivered the judgment of the court.
Presiding Justice Welch and Justice Wharton concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Postconviction counsel did not fail to comply with Rule 651(c) and provided reasonable assistance throughout second and third stage postconviction proceedings.

¶ 2    Defendant, Jon Cearlock, appeals from the trial court's order denying his amended petition for postconviction relief following a third-stage evidentiary hearing. On appeal, defendant contends that postconviction counsel failed to comply with Illinois Supreme Court Rule 651(c) and to provide reasonable assistance at the evidentiary hearing. Defendant argues that postconviction counsel failed to present evidence to support the defendant's claims in his amended postconviction petition. Only two of those claims are

1

the subject of this appeal. Specifically, defendant claimed that trial counsel was ineffective for failing to have the cell phones of the defendant and Jordan Matlock, a witness for the State, forensically tested to determine the locations of the cell phones at the time of the alleged crime. Defendant also claimed that a State's witness, Adam Rhodes, partially recanted his trial testimony. For the following reasons, the trial court's order is affirmed.

¶ 3                                    I. BACKGROUND

¶ 4      On July 10, 2005, defendant was charged by criminal complaint with first-degree murder (720 ILCS 5/9-1(a)(1) (West 2004)) and concealment of a homicidal death (720 ILCS 5/9-3.1(a) (West 2004)). Defendant and his friend, Jordan Matlock, were subsequently indicted by a grand jury on the same charges. In August 2006, the case against defendant proceeded to a jury trial. Prior to trial, the State entered into a plea agreement with Matlock. Pursuant to that plea agreement, if Matlock testified truthfully against the defendant, the State agreed to dismiss the charges against Matlock and offer him a three-year sentence for obstructing justice. In the first trial against defendant, only the charge of murder in the first degree was submitted to the jury.[1] The jury could not reach a unanimous verdict, and the trial court declared a mistrial. In February 2009, the State retried defendant on the charge of first-degree murder, and defendant was convicted.

¶ 5      The following is a summary of the evidence presented at the second trial which is necessary for the disposition of defendant's claims in this appeal. On the night of July 1, 2005, the victim and her friend went to a bar in St. Louis, Missouri, where they encountered

---

[1]The State dismissed the charge of concealment of a homicidal death against defendant during the jury instruction conference at trial.

defendant, who was with his acquaintances, Chad Chappie, Tim Kertz, Eric Lutman, and Jordan Matlock—defendant's friend and roommate. At the bar, defendant and the victim were talking and discussed having sex. After the bar closed, defendant and the victim drove Chappie, Kertz, Lutman, and Matlock in the victim's car to a strip club in Centreville, Illinois. Defendant and the victim then drove to Belleville, Illinois, where they parked behind a building and had sex in the car. Thereafter, an argument ensued between the victim and defendant, and the argument became physical. Outside the car, defendant shot the victim once in the back of the head. Defendant drove away in the victim's car, and the victim died from the gunshot wound.

¶ 6    The evidence further revealed that approximately an hour and a half after defendant had dropped Chappie, Kertz, Lutman, and Matlock off at the club, the defendant returned to the club, without the victim. Defendant met with Matlock and told him that something serious had happened, and that they needed to leave. Defendant told Matlock that defendant needed Matlock's help. Matlock accompanied the defendant outside of the club, they got into the victim's car, and drove away. While driving, defendant explained to Matlock that after the defendant and the victim had sex, the victim became upset with defendant and sprayed him with mace. Defendant then assaulted the victim and shot her. Matlock agreed to help defendant and threw the victim's belongings out of the car while they were driving. Matlock also took possession of the defendant's gun, which was still in the victim's car. Defendant and Matlock drove to Wal-Mart and purchased ammonia and a spray bottle. They then cleaned the interior of the car and abandoned it in a residential area on the north

3

side of St. Louis. They returned to their apartment in St. Louis at approximately 6 a.m. on the morning of July 2, 2005.

¶ 7    That morning, Matlock called Chappie and insisted on seeing him immediately. Shortly thereafter, defendant and Matlock went to Chappie and Kertz's apartment. Matlock told Chappie and Kertz that something had happened the previous night. Matlock suggested that, if anyone asked, Chappie and Kertz should claim that they did not see defendant and Matlock the night before. Chappie testified that the defendant was "[s]weating profusely" and "pacing back and forth." When the defendant and Matlock returned to their apartment, Matlock testified that the defendant showered and washed his clothes in the laundry. Defendant also threw away his shoes from the previous night. At trial, Matlock maintained that he never went to the location where the victim was shot.

¶ 8    On July 6, 2005, the victim's body was discovered, and a homicide investigation began. After seeing a television news report about the victim's murder, Chappie and Kertz contacted law enforcement. When defendant and Matlock learned that law enforcement was looking for them, they decided to leave St. Louis.

¶ 9    On July 8, 2005, defendant asked Adam Rhodes to assist the defendant with a "sticky situation." Defendant informed Rhodes that things had gotten "out of hand" with the victim, and defendant "lost it on her" when she tried to mace him. Rhodes subsequently took defendant and Matlock to a shack in a wooded area near Arnold, Missouri. Acting on defendant's behalf, Rhodes asked the defendant's girlfriend to get the pistol from Matlock's bedroom and bring it to Rhodes. After defendant's girlfriend gave Rhodes the pistol, he testified he threw it into the Mississippi River.

4

¶ 10    On July 9, 2005, the defendant decided to turn himself in to law enforcement. While hiding, defendant told Matlock that the defendant intended to claim he was beat up and had amnesia. The defendant then left. Matlock called his sister in Alabama and asked her to come get him so he could "go home" to Alabama. His sister then came from Alabama to the location he had given to her. But, when Matlock's sister arrived, she was with law enforcement, and Matlock was arrested.

¶ 11    When defendant was interviewed by law enforcement, he had an injury on his forehead and alleged he had been beaten up the night before. Defendant claimed he did not remember going to the bar on the night of July 1, and stated that he did not believe he had done anything wrong. Defendant asked why he had been arrested and subsequently requested an attorney. The defendant's interview terminated.

¶ 12    The State's pathologist, Dr. Raj Nanduri, performed an autopsy on the victim. Dr. Nanduri testified that she found a broken bone in the victim's hand. Dr. Nanduri believed this injury had occurred simultaneously with the gunshot wound. Dr. Nanduri could not opine as to how long the victim had lived after sustaining the injuries.

¶ 13    At trial, defendant advanced an argument that Jordan Matlock shot the victim. In his defense, defendant called two witnesses to testify to his reputation in the community for being a "peaceful man." Defendant also called a fellow inmate at the St. Clair County Jail who claimed he overheard a conversation between defendant and Matlock. The fellow inmate testified that defendant asked, "why did you have to do that to that girl, and then [Matlock] had said that it was the best thing for him to do at the time." Finally, defendant called a pathologist, Dr. Malcolm Noyes Goodwin, Jr. Dr. Goodwin opined that the

victim's hand injury and gunshot wound were not simultaneous, as testified to by Dr. Nanduri. Dr. Goodwin's testimony suggested that after the victim injured her hand, she was alive "for at least half an hour" before being shot.

¶ 14   When the case was submitted to the jury at the second trial, no accountability instruction was given. Following deliberations, the jury found defendant guilty of first-degree murder. He was subsequently sentenced to 34 years in the Illinois Department of Corrections. This court affirmed defendant's conviction on direct appeal, *People v. Cearlock*, 402 Ill. App. 3d 1211 (2010) (unpublished order under Supreme Court Rule 23).

¶ 15   On March 12, 2012, defendant filed a *pro se* petition for postconviction relief. In his *pro se* petition, defendant made several claims of ineffective assistance of trial counsel and appellate counsel. Defendant attached to the petition a letter from the State to trial counsel, affidavits from defendant's parents, and excerpts from the trial transcript. The trial court found that defendant alleged the gist of a constitutional violation, passed the petition for second stage proceedings, and appointed postconviction counsel.

¶ 16   On March 31, 2014, postconviction counsel filed an amended petition for postconviction relief and incorporated the majority of defendant's claims from the *pro se* petition. Counsel also included a claim that trial counsel failed to have the cell phones of defendant and Matlock "forensically tested" to determine the locations of the cell phones at the time of the victim's death because "[s]uch testing would have discredited Matlock's version of events." This claim was added after defendant sent a letter to postconviction counsel informing him that the "pings" from Matlock's phone would put Matlock "at the scene of the crime." In support of defendant's amended petition, postconviction counsel

6

attached the same documents that defendant had previously attached to the *pro se* petition. Postconviction counsel also filed a certificate of compliance with Rule 651(c) which stated that counsel had: (1) consulted with defendant to ascertain his contentions of deprivation of constitutional rights; (2) examined the entire record of proceedings of trial; and (3) made any amendments to the *pro se* petition that were necessary for adequate presentation of defendant's contentions.

¶ 17 The State subsequently filed an answer denying the allegations in the amended petition. On July 15, 2014, the State provided counsel with "State records relating to cell phones," and counsel requested additional time to evaluate the records.

¶ 18 On August 5, 2015, postconviction counsel filed an "amendment" to the amended postconviction petition. In the amendment, postconviction counsel included a claim that Adam Rhodes, a witness for the State, had "partially recanted" his trial testimony, which supported defendant's theory that Matlock was "the guilty party." Attached to the amendment was an unsigned affidavit that purported to reflect the "numerous conversations" postconviction counsel had with Rhodes. The unsigned affidavit claimed, contradictory to Rhodes' trial testimony, that Matlock asked Rhodes to retrieve the pistol from Matlock's room, and that Rhodes never had a conversation with defendant about disposing of the pistol. Postconviction counsel explained that the affidavit had been prepared for Rhodes' signature and was twice mailed to Rhodes. Postconviction counsel further submitted that Rhodes had confirmed the assertions contained in the affidavit were accurate and that he had mailed the affidavit to counsel. The affidavit, however, was never received by postconviction counsel. Postconviction counsel made additional attempts to

7

contact Rhodes but was unsuccessful. Eventually, Rhodes' phone indicated that "the subscriber was not accepting calls." Postconviction counsel requested that the trial court waive Rhodes' signature on the affidavit "pursuant to statute."

¶ 19 After defendant filed the amendment to his amended postconviction petition, the State sought leave to withdraw their previously filed answer and requested leave to file a motion to dismiss. Over defendant's objection, the trial court granted this request. In the motion to dismiss, the State argued that defendant failed to allege what aspect of Matlock's testimony would have been discredited by cell phone records. The State submitted that "due to the weight of the evidence, no amount of 'forensic testing' of the cellular phones would have produced a different outcome." In response to defendant's claim regarding Rhodes' testimony, the State asserted that an evidentiary hearing was not warranted on this matter without a signed affidavit substantiating the claim.

¶ 20 On December 21, 2015, the trial court held a hearing on the State's motion to dismiss. Postconviction counsel informed the trial court that defendant would be proceeding on both the amended postconviction petition and the subsequent amendment to that petition, filed by postconviction counsel. Regarding the Rhodes affidavit, counsel stated, "I've been unable to get him to sign it. I can't force him to execute the thing[.]" Counsel also acknowledged that he would have had to produce Rhodes to testify at an evidentiary hearing. The trial court took the matter under advisement and subsequently denied the State's motion to dismiss. Thereafter, the matter was set for an evidentiary hearing.

8

¶ 21    On July 18, 2016, the trial court held an evidentiary hearing. This third-stage evidentiary hearing was held on the amended postconviction petition and the subsequent amendment to that petition, filed by postconviction counsel. Defendant testified on his own behalf and called his parents as witnesses. During defendant's direct examination, he confirmed that he had conversations with Rhodes regarding his trial testimony. The details of defendant's conversations with Rhodes were objected to by the State on the basis of hearsay, and the trial court sustained the objection. At the end of defendant's evidence, postconviction counsel informed the trial court that he wanted to "attempt to testify with regard to Adam Rhodes' affidavit." Following an objection by the State, the trial court denied this request. Defendant presented no other evidence related to Rhodes' testimony or any cell phone records.

¶ 22    The State then called defendant's trial counsel, who testified that he never discussed forensically testing cell phones with defendant. Trial counsel was aware, however, that Matlock's cell phone had been used to triangulate his location after he fled St. Louis. Trial counsel admitted that after reviewing the amended petition, investigating the cell phone records was "a decent enough idea," but neither he, nor anyone else, thought of it. On cross-examination, postconviction counsel did not further question trial counsel regarding the cell phone records. At the conclusion of the hearing, the trial court took the matter under advisement.

¶ 23    On January 25, 2017, the trial court denied defendant's amended postconviction petition and postconviction counsel's amendment to the petition. The trial court found that the claim concerning Rhodes' recanted testimony was unsupported by the evidence and the

9

unsigned affidavit was not admissible. The trial court's order made no mention regarding defendant's claim that trial counsel was ineffective for not pursuing an investigation of the cell phone records. No motion to reconsider was filed. This appeal follows.

¶ 24                               II. ANALYSIS

¶ 25    On appeal, defendant claims that postconviction counsel did not comply with Rule 651(c) and failed to provide reasonable assistance of counsel. Specifically, defendant argues that postconviction counsel did not present evidence for the defendant's postconviction claims regarding cell phone records, and Adam Rhodes' alleged recantation. Defendant contends that remand for a new evidentiary hearing is necessary so that he may have the opportunity to support these claims with evidence. Whether counsel complied with Rule 651(c) and provided reasonable assistance is reviewed *de novo*. *People v. Profit*, 2012 IL App (1st) 101307, ¶ 17.

¶ 26    The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2014)) provides a three-stage procedure through which a defendant may challenge his conviction or sentence based upon allegations of a substantial violation of his state or federal constitutional rights. 725 ILCS 5/122-1(a)(1); *People v. Hotwagner*, 2015 IL App (5th) 130525, ¶ 27. At the first stage, the trial court independently reviews a defendant's petition, and if the court determines the petition is "frivolous" or "patently without merit," the court may dismiss the petition. 725 ILCS 5/122-2.1(a)(2) (West 2014); *Hotwagner*, 2015 IL App (5th) 130525, ¶ 28. If the petition presents the gist of a constitutional claim, however, the petition passes to the second stage. *Hotwagner*, 2015 IL App (5th) 130525, ¶¶ 28-29.

10

¶ 27 In the second stage, the trial court may appoint counsel to represent an indigent defendant. *Hotwagner*, 2015 IL App (5th) 130525, ¶ 29. Pursuant to Rule 651(c), counsel must consult with the defendant to determine his contentions of constitutional violations, examine the record, and make any necessary amendments to the postconviction petition to ensure the defendant's contentions are adequately presented. Ill. S. Ct. R. 651(c) (eff. Feb. 6, 2013). The purpose of Rule 651(c) is to ensure that postconviction counsel shapes the defendant's claims into the proper legal form and presents them to the trial court. *People v. Perkins*, 229 Ill. 2d 34, 44 (2007). Substantial compliance with the rule is sufficient. *People v. Miller*, 2017 IL App (3d) 140977, ¶ 47. The filing of a Rule 651(c) certificate gives rise to a rebuttable presumption that postconviction counsel provided reasonable assistance. *People v. Marshall*, 375 Ill. App. 3d 670, 680 (2007). To overcome this presumption, the defendant must demonstrate his counsel's failure to substantially comply with the duties imposed by Rule 651(c). *People v. Wallace*, 2016 IL App (1st) 142758, ¶ 26. After counsel makes all necessary amendments to the postconviction petition, the State may move to dismiss it. *People v. Pendleton*, 223 Ill. 2d 458, 472 (2006). If the State's motion to dismiss is denied, or no motion is filed, the State must answer the petition. *Pendleton*, 223 Ill. 2d at 472. So long as no further pleadings are allowed by the trial court, the proceedings advance to the third stage for an evidentiary hearing. *Pendleton*, 223 Ill. 2d at 472-73.

¶ 28 In the third stage, the defendant bears the burden of proving a substantial violation of his constitutional rights. *Hotwagner*, 2015 IL App (5th) 130525, ¶ 30. An evidentiary hearing allows the parties to develop matters not contained in the record (*Hotwagner*, 2015

11

IL App (5th) 130525, ¶ 30), and the trial court may receive evidentiary proof by affidavits, depositions, testimony, or other evidence (725 ILCS 5/122-6 (West 2014)). At the evidentiary hearing, postconviction counsel must argue the merits of the defendant's claims as presented in the petition following review by counsel at the second stage. *Hotwagner*, 2015 IL App (5th) 130525, ¶ 29.

¶ 29    In postconviction proceedings, defendants have no constitutional right to counsel, effective or otherwise. *People v. Custer*, 2019 IL 123339, ¶ 32. Rather, a defendant is only entitled to a reasonable level of assistance under the Act, a standard that is significantly lower than the standard mandated at trial by our state and federal constitutions. *Custer*, 2019 IL 123339, ¶ 32. "Commensurate with the lower reasonable assistance standard mandated in postconviction proceedings, Illinois Supreme Court Rule 651 *** sharply limits the requisite duties of postconviction counsel." *Custer*, 2019 IL 123339, ¶ 32.

¶ 30    Defendant first argues that postconviction counsel failed to comply with Rule 651(c) and to provide reasonable assistance in presenting defendant's claim that trial counsel was ineffective for failing to have Matlock's cell phone forensically tested for location data. The record, however, belies this conclusion.

¶ 31    Defendant wrote postconviction counsel a letter asking counsel to include a claim regarding Matlock's cell phone records in an amended petition because the "pings" from Matlock's cell phone would place Matlock at the scene of the murder. Postconviction counsel then filed an amended postconviction petition with a claim that trial counsel was ineffective for failing to have the cell phones of defendant and Matlock forensically tested for location data. Postconviction counsel also filed a "Certificate of Compliance" certifying

12

that counsel consulted with the defendant to ascertain his contentions of deprivation of constitutional rights, examined the entire record of proceedings of trial, and made amendments to the *pro se* petition that were necessary for the adequate presentation of the defendant's contentions. After filing the amended postconviction petition, postconviction counsel received "State records relating to cell phones," and requested time to review the same. Despite the State filling a motion to dismiss, postconviction counsel's pleadings allowed defendant's petition to proceed to a third-stage evidentiary hearing.

¶ 32 At the evidentiary hearing, postconviction counsel indicated that defendant raised "a number of issues" and counsel was going to "go through these chronologically as they have been filed." Postconviction counsel then proceeded to question the defendant about each of the defendant's postconviction claims, except the cell phone records claim. When the State presented its evidence, the State questioned trial counsel about whether trial counsel had discussions with the defendant about forensically testing the cell phones. Postconviction counsel, however, did not seek to advance the cell phone claim when he cross-examined trial counsel.

¶ 33 Defendant claims that postconviction counsel provided unreasonable assistance because he did not support the various claims advanced in his postconviction pleadings with evidence. The report of proceedings, however, clearly reveals that the defendant testified, and was asked about all of the claims set forth in the amended petitions, except the allegation relating to the cell phones, and the failure to forensically test them. While it is true that postconviction counsel never questioned the defendant regarding the cell phone records or presented evidence at the evidentiary hearing, "[a] court may reasonably

13

presume postconviction counsel made a concerted effort to obtain evidence in support of postconviction claims, but was unsuccessful." *Wallace*, 2016 IL App (1st) 142758, ¶ 27. Here, the record shows the postconviction counsel received the cell phones records, and that he even asked for additional time to review them. The fact that postconviction counsel did not ask the defendant about them supports a reasonable presumption that postconviction counsel reviewed the cell phone records, was unable to substantiate defendant's claim, and chose not to pursue the issue.

¶ 34    Defendant attempts to analogize his case to *People v. Thompson*, 2016 IL App (3d) 150644. In *Thompson*, the defendant asserted that his counsel failed to provide reasonable assistance in presenting defendant's claim that he was unfit to waive his constitutional right to trial counsel. *Thompson*, 2016 IL App (3d) 150644, ¶ 20. During second stage proceedings, the trial court in *Thompson* dismissed the defendant's postconviction petition. *Thompson*, 2016 IL App (3d) 150644, ¶ 1. In reversing the trial court's dismissal, the appellate court held that the record rebutted the presumption that postconviction counsel provided the defendant with reasonable assistance. *Thompson*, 2016 IL App (3d) 150644, ¶¶ 23-24. The appellate court reasoned that postconviction counsel "failed to take *any* steps to obtain and review defendant's pretrial mental health records." (Emphasis added.) *Thompson*, 2016 IL App (3d) 150644, ¶ 24. The court also noted that postconviction counsel could have obtained the records via leave of the trial court. *Thompson*, 2016 IL App (3d) 150644, ¶ 24. Accordingly, the court remanded the case for postconviction counsel to obtain and review the defendant's pretrial mental health records and to amend the postconviction petition, as necessary. *Thompson*, 2016 IL App (3d) 150644, ¶ 30.

14

¶ 35     *Thompson*, however, is readily distinguishable from this case. Here, the defendant's petition survived the State's motion to dismiss and proceeded to a third-stage evidentiary hearing. As already noted, postconviction counsel obtained the cell phone records from the State and requested additional time to review them. It is reasonable to assume, therefore, that postconviction counsel reviewed those records and chose not to advance the defendant's claim. Thus, *Thompson* does not support the defendant's assertion that postconviction counsel failed to provide reasonable assistance of counsel.

¶ 36     Next, we turn to defendant's claim that postconviction counsel did not comply with Rule 651(c) and failed to provide reasonable assistance regarding the defendant's claim that Rhodes partially recanted his testimony. Defendant claims that counsel failed to provide reasonable assistance because postconviction counsel did not present admissible evidence or secure Rhodes' appearance and testimony at the evidentiary hearing. Again, we disagree.

¶ 37     We note that postconviction counsel filed a separate pleading, adding the allegation involving Rhodes' testimony, after postconviction counsel had filed his Rule 651(c) certificate. This fact, in addition to postconviction counsel's filing of the pleading involving the recantation of testimony, reveals that the record, as a whole, demonstrates counsel's compliance with Rule 651(c). *People v. Richmond*, 188 Ill. 2d 376, 380 (1999). Here, postconviction counsel explained that he had numerous conversations with Rhodes, twice mailed the affidavit to Rhodes, and confirmed with Rhodes that the affidavit's contents were true. Rhodes allegedly mailed an executed affidavit to postconviction counsel, but counsel never received the affidavit. Postconviction counsel represented to the

trial court that his additional attempts to contact Rhodes were unsuccessful. The fact that postconviction counsel filed the pleading involving Rhodes' recantation, with an explanation as to why an executed affidavit was not attached, further demonstrates counsel's compliance with Rule 651(c), and his reasonable assistance of counsel.

¶ 38 We must now determine whether postconviction counsel provided reasonable assistance at the third-stage evidentiary hearing. During the motion to dismiss hearing, postconviction counsel acknowledged that he would have to produce Rhodes if the case proceeded to an evidentiary hearing. When the case did proceed to an evidentiary hearing, Rhodes did not testify. As previously stated, however, "[a] court may reasonably presume postconviction counsel made a concerted effort to obtain evidence in support of postconviction claims, but was unsuccessful." *Wallace*, 2016 IL App (1st) 142758, ¶ 27. The record demonstrates that postconviction counsel made efforts to secure Rhodes' signature on an affidavit. Given counsel's attempts to secure Rhodes' signature on an affidavit, and acknowledgement that the affidavit, alone, would not be a sufficient substitute for the testimony of Rhodes during an evidentiary hearing, we may reasonably presume that postconviction counsel at least made an effort to produce Rhodes for the hearing, but was unsuccessful.

¶ 39 Even though Rhodes was not present to testify, counsel still sought to advance the defendant's claim that Rhodes partially recanted his testimony. Postconviction counsel attempted to question defendant about the defendant's conversations with Rhodes and requested to make a "proffer" as to counsel's conversations with Rhodes. Counsel's efforts were denied, following objections by the State. The defendant points to no other source of

16

evidence to support his claim that Rhodes had partially recanted his testimony, and without any such evidence, the defendant's claim of unreasonable assistance of counsel must fail.

¶ 40                                III. CONCLUSION

¶ 41    The defendant has failed to present any evidence of unreasonable assistance of counsel or that postconviction counsel failed to comply with Rule 651(c). In fact, the record shows just the opposite. Accordingly, we find that postconviction counsel complied with Rule 651(c) and provided reasonable assistance of counsel throughout the second and third stage proceedings herein. We affirm the trial court's order denying the defendant's amended postconviction petition and the subsequent amendment to that petition.


¶ 42    Affirmed.