2025 IL App (1st) 231486-U

SECOND DIVISION
May 13, 2025

No. 1-23-1486

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 12CR15200 |
| | ) | |
| CARLOS JENKINS, | ) | Honorable |
| | ) | Charles P. Burns, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE McBRIDE delivered the judgment of the court.
Presiding Justice Van Tine and Justice Howse concurred in the judgment.

**ORDER**

¶ 1   *Held*:  (1) The trial court's denial of defendant's petition for postconviction relief was not manifestly erroneous where his trial counsel was not ineffective for failing to cross-examine a witness about defendant's inculpatory statement; and (2) his postconviction counsel provided reasonable assistance.

¶ 2   Defendant Carlos Jenkins appeals from the trial court's denial of postconviction relief following a third-stage evidentiary hearing. Specifically, he argues that the trial court erred in denying his petition for postconviction relief because he established by a preponderance of the evidence that his trial counsel was ineffective. Additionally, defendant contends that his postconviction counsel provided unreasonable assistance.

¶ 3    Following a bench trial, defendant was convicted of armed robbery and subsequently sentenced to a term of 25 years in the Department of Corrections. The following facts, taken from defendant's direct appeal, are discussed to the extent necessary to resolve the issues on appeal. See *People v. Jenkins*, 2016 IL App (1st) 141673-U.

¶ 4    At trial, Brian Green testified that on July 15, 2012, he was working at an adult novelty store on West Randolph Street in Chicago. Around 11 a.m., defendant entered the store and approached the counter. Defendant then "pulled out a gun" and demanded money. Green described the firearm as black with a brown handle. While Green was opening the cash register, defendant said, " 'Hurry up or I'll shoot you.' " Green removed money from the cash register and handed it to defendant, who then left the store. Green contacted the police, spoke to officers, and told them that the store had a video surveillance system. He later identified defendant in a lineup, as well as in open court. Green identified himself and defendant in footage from the surveillance system and in a still photograph from the footage which he testified showed "defendant with a gun in his hand." While at the cash register, Green stood behind a "stomach high" counter, but he was able to observe defendant draw the firearm because defendant "stepped back." The firearm was pointed at Green "[b]riefly," for only one or two seconds.

¶ 5    Detective Robert Smith from the Chicago police department spoke with defendant on July 26, 2012, at a police station. Detective Smith advised defendant of his *Miranda* rights and defendant indicated that he understood his rights. When the State asked the detective if defendant made an "inculpatory statement," Detective Smith answered in the affirmative. Detective Smith was present when Green identified defendant in the lineup. Trial counsel did not cross-examine Smith.

¶ 6      In his closing argument, trial counsel argued there was "nothing in the evidence" to indicate that defendant was armed with a firearm or even a dangerous weapon. Green supplied "no details" about the object, no firearm was recovered, and the video and photograph did not clearly show the object in defendant's hand. Counsel concluded that the State could not meet its burden based solely on Green's "vague" description and asked the court to find defendant guilty of the lesser-included offense of robbery. The State responded that Green observed the firearm and heard defendant say to hurry up or be shot and that evidence, combined with the video and photograph, was sufficient to establish that defendant possessed a firearm.

¶ 7      The trial court found defendant guilty of armed robbery. In its factual findings, the court acknowledged there was not an "extensive" description of the firearm, but that Green described it as black with a brown handle and "unequivocally" stated it was a firearm. The court concluded that defendant's threat to shoot Green and his actions on the video indicated he was not holding "something innocent" like a "plastic gun or piece of metal." The court noted that "[t]here was nothing in the record that indicated it was something other than a gun."

¶ 8      On direct appeal, defendant argued that his conviction should be reduced to simple robbery because the State failed to prove that he was armed with a firearm. This court affirmed defendant's armed robbery conviction. See *Jenkins*, 2016 IL App (1st) 141673-U.

¶ 9      Defendant filed his *pro se* postconviction petition in May 2018, raising multiple claims, including an allegation that his trial counsel was ineffective for failing to cross-examine Detective Smith regarding the content of defendant's inculpatory statement. According to defendant, he admitted in his statement to Detective Smith that while he was the perpetrator of the robbery, the firearm he displayed was a plastic toy gun. He further asserted that his appellate counsel was ineffective for failing to raise this claim on direct appeal. In support, defendant

attached handwritten and typed summaries of his statement. The handwritten summary was part of a "General Progress Report" by the Chicago police department detective division and indicated that defendant robbed a cashier and displayed a "toy/replica gun" during the offense. In the typed summary, defendant told Detective Smith and an assistant State's Attorney that he robbed the store with a "plastic toy gun" because he needed money for crack.

¶ 10     In August 2018, the trial court summarily dismissed the petition as frivolous and patently without merit in a written order, finding that even if defendant's statements were admissible, "there is no arguable probability the outcome would have been different had counsel elicited [defendant's] statement he used a toy gun." Defendant appealed and this court reversed the summary dismissal and held that defendant had set forth an arguable claim for ineffective assistance of counsel. *People v. Jenkins*, 20221 IL App (1st) 182118-U, ¶ 20. We remanded for further proceedings under the Illinois Post-Conviction Hearing Act (the Post-Conviction Act) (725 ILCS 5/122-1 through 122-8 (West 2020)).

¶ 11     During second-stage proceedings, the trial court appointed counsel to represent defendant. Postconviction counsel did not amend defendant's postconviction petition. However, counsel filed the mandated certificate pursuant to Supreme Court Rule 651(c) (Ill. S. Ct. R. 651(c) (eff. Feb. 6, 2013)). Counsel averred that she had reviewed the following: the trial file from the public defender; the court file, specifically looking for any pretrial motions for discovery and motions for a new trial; and all laws relating to accountability and extended sentences, as well as the laws for armed robbery. The State moved to dismiss defendant's petition and argued, in relevant part, that defendant's claim of ineffective assistance was without merit. Following briefing, the trial court advanced defendant's ineffective assistance claim of trial and appellate counsel for trial counsel's failure to cross-examine Detective Smith about

defendant's inculpatory statement to a third stage evidentiary hearing and dismissed all other remaining claims.

¶ 12   At the evidentiary hearing, postconviction counsel informed the trial court that defendant wanted to withdraw all claims because he did not want to proceed with the hearing. The court then asked defendant about why he wanted to withdraw his claims, and defendant told the court that he did not believe he could "get any justice here in this courtroom." The trial court stated that it was going to proceed with the hearing. After defendant indicated that he did not want to be present in the courtroom, the court placed defendant in lockup and allowed him to watch the hearing via a Zoom video conference.

¶ 13   The evidence presented at the hearing was testimony from defendant's trial counsel as a witness for the State, which established the following. In 2013, trial counsel was assigned to the felony trial division in the Cook County Public Defender's office. He was with this division for a little over 11 years and participated in approximately 30 jury trials and at least 100 bench trials. He had never been found to be ineffective in his representation of any client. He represented defendant at a bench trial held in December 2013. Trial counsel reviewed the trial transcripts before his testimony, as well as this court's decision remanding for further postconviction proceedings and the trial court's order advancing this claim for an evidentiary hearing. Counsel had an independent recollection of his representation of defendant who had been charged with two armed robberies with a firearm that occurred on the same day, the first at an adult store and the second at a Dunkin' Donuts. He recalled the case because it was unusual to conduct a bench trial on the elected case and follow with a jury trial on the nonelected matter after losing the first trial.

¶ 14    Trial counsel testified that his theory at trial was that "the State could not prove beyond a reasonable doubt that [defendant] was using a firearm during the commission of the offense." Counsel's defense sought to avoid the firearm enhancement. Counsel explained his strategy was based on the State's failure to prove the presence of the firearm because no firearm was recovered, the video of the incident showed that "the object that the perpetrator produced in their hand was only above the counter for a few seconds at most," and Green described "something that was brown and black that he thought looked like a gun."

¶ 15    Trial counsel was aware of defendant's statement to police in which he admitted to committing the robberies but used a toy gun. Counsel "did not consider trying to introduce the statement in any way." He was pursuing a reasonable doubt argument based on a lack of evidence as a defense and "was not attempting to prove what was used during the robbery, just that the State couldn't prove what was used." When asked by the trial court if there was any conversation with defendant about introducing his statement to police, counsel responded:

> "I remember that the State, I guess, asked about an inculpatory statement because I didn't think that they were attempting to introduce any statement at trial so when that did occur I guess that just caught me off-guard a little bit but I did not consider attempting to cross-examine the detective about the rest of the statement regarding the toy gun. It was a bench trial so I didn't see any evidentiary value in attempting to introduce the fact that it was a toy gun as stated by the defendant's post-arrest. [*Sic*.] Like I said I was arguing the lack of evidence, not what the defendant said it was after he was arrested."

¶ 16    At arguments, postconviction counsel waived argument and reserved rebuttal. The State argued that defendant could not establish that trial counsel was ineffective by a preponderance of

the evidence and recounted counsel's testimony about his defense strategy. Postconviction counsel declined to argue in rebuttal.

¶ 17    In August 2023, the trial court entered its written order denying defendant's postconviction petition. The court found that defendant failed to establish his ineffectiveness claim by a preponderance of the evidence. Specifically, the court concluded that "it was a reasonable and sound strategy for [trial counsel] to attempt to prove the State could not prove beyond a reasonable doubt [defendant] was armed with any gun during the commission of the offense." Further, the court found defendant did not suffer any prejudice because the trial court "primarily based its finding of guilt on the victim's testimony and video evidence; there was no mention in the ruling of Smith's testimony or [defendant's] inculpatory statement. Thus, it cannot be said the introduction of the statement mentioning the toy or plastic gun would likely have changed the result at trial."

¶ 18    On appeal, defendant argues that the trial court erred in denying his postconviction claim of ineffective assistance of counsel following an evidentiary hearing. Specifically, he contends "there was a reasonable chance" that he would have been convicted of aggravated robbery, rather than armed robbery, had trial counsel elicited defendant's statement admitting that he used a toy gun during the commission of the robbery. The State maintains that the trial court's findings were not manifestly erroneous, and the court properly dismissed the petition.

¶ 19    The Post-Conviction Act provides a tool by which those under criminal sentence in this state can assert that their convictions were the result of a substantial denial of their rights under the United States Constitution or the Illinois Constitution or both. 725 ILCS 5/122-1(a) (West 2020); *People v. Coleman*, 183 Ill. 2d 366, 378-79 (1998). Postconviction relief is limited to constitutional deprivations that occurred at the original trial. *Id*. at 380. "A proceeding brought

under the [Post-Conviction Act] is not an appeal of a defendant's underlying judgment. Rather, it is a collateral attack on the judgment." *People v. Evans*, 186 Ill. 2d 83, 89 (1999). This appeal comes to us following a third-stage evidentiary hearing under the Post-Conviction Act.

¶ 20      At the evidentiary hearing, "the circuit court serves as the fact finder, and, therefore, it is the court's function to determine witness credibility, decide the weight to be given testimony and evidence, and resolve any evidentiary conflicts." *People v. Domagala*, 2013 IL 113688, ¶ 34. At the evidentiary hearing, the defendant bears the burden of proof to show a denial of a constitutional right by the preponderance of the evidence. *People v. Coleman*, 2013 IL 113307, ¶ 92.

¶ 21      Generally, because the trial court makes factual and credibility determinations after the hearing, the court's decision will not be reversed unless it is manifestly erroneous. *People v. English*, 2013 IL 112890, ¶ 23. " 'Manifest error' is error which is clearly plain, evident, and indisputable." *People v. Taylor*, 237 Ill. 2d 356, 373 (2010). Our review of an ineffective assistance counsel claim following an evidentiary hearing presents a mixed standard of review. *People v. Coleman*, 2015 IL App (4th) 131045, ¶ 66. While we accept the trial court's findings of fact so long as they are not against the manifest weight of the evidence, we review whether the facts found by the trial court prove ineffective assistance of counsel *de novo*. *Id*.

¶ 22      To demonstrate a claim of ineffective assistance of trial counsel, a defendant must establish that: (1) his counsel's performance was deficient, and (2) he suffered prejudice due to counsel's deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To demonstrate performance deficiency, a defendant must establish that counsel's performance fell below an objective standard of reasonableness. *People v. Edwards*, 195 Ill. 2d 142, 163 (2001).

¶ 23      "A defendant is entitled to reasonable, not perfect, representation, and mistakes in

strategy or in judgment do not, of themselves, render the representation incompetent." *People v. Fuller*, 205 Ill. 2d 308, 331 (2002). "In recognition of the variety of factors that go into any determination of trial strategy, courts have held that such claims of ineffective assistance of counsel must be judged on a circumstance-specific basis, viewed not in hindsight, but from the time of counsel's conduct, and with great deference accorded counsel's decisions on review." *Id.* at 330-31 (citing *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000); *Strickland*, 466 U.S. at 689). Further, a mistake in trial strategy or an error in judgment by defense counsel alone will not render representation constitutionally defective. *People v. Peterson*, 2017 IL 120331, ¶ 80. " 'Only if counsel's trial strategy is so unsound that he entirely fails to conduct meaningful adversarial testing of the State's case will ineffective assistance of counsel be found.' " *Id.* (quoting *People v. Perry*, 224 Ill. 2d 312, 355-56 (2007)).

¶ 24    In evaluating sufficient prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. If a case may be disposed of on the ground of lack of sufficient prejudice, that course should be taken, and the court need not ever consider the quality of the attorney's performance. *Strickland*, 466 U.S. at 697.

¶ 25    According to defendant, his trial counsel's representation was deficient because he failed to cross-examine Detective Smith about defendant's admission that he robbed the store with a toy gun. As detailed above, the State elicited from Detective Smith that defendant made an "inculpatory statement." No further details of this statement were disclosed during Detective Smith's direct testimony and trial counsel did not question him about this statement on cross.

¶ 26    The evidence presented at the evidentiary hearing demonstrated that trial counsel's

decision not to question Detective Smith about the substance of defendant's inculpatory statement was part of his trial strategy. Trial counsel explained that his defense strategy was to challenge whether the State had proven he was armed with a firearm beyond a reasonable doubt. He focused on the brief time, *i.e.*, a couple of seconds, that the firearm was shown to Green, as well as the lack of a clear image in the video recording. Counsel's theory was that this evidence was insufficient and could only support a finding of simple robbery. He was aware of defendant's statement to the detective in which he admitted to committing the robbery but had used a toy gun. He made a strategic decision not to elicit evidence that defendant had possessed a toy gun because that was counter to his defense theory. Trial counsel specifically stated, "it was a beyond a reasonable doubt argument I was making. It was a lack of evidence argument I was making. I was not attempting to prove what was used during the robbery, just that the State couldn't prove what was used."

¶ 27    The record fully supports defense counsel's testimony that he pursued the reasonable doubt defense. In his closing argument, counsel argued that "The State has not met their burden regarding the fact that this is an armed robbery. There's nothing in the evidence to indicate that [defendant] was armed either with a firearm or even a dangerous weapon that day." Counsel then discussed Green's general description of the firearm as black with a brown handle but pointed out that the description lacked any detail of what it was made of. Counsel observed that in a still photo from the video one could not "make out clearly what exactly it is in" defendant's hand. Counsel further argued that the entire robbery lasted 45 seconds and Green was nervous while trying to open the cash register. "Most of those 45 seconds if not all but one or two of them was spent with the register not staring at what was in [defendant's] hand what he by his own admission described as [defendant] placed whatever it was he pulled out, it went right back down

to his waistband below counter height."

¶ 28    Our courts have repeatedly held that "[d]ecisions concerning which witnesses to call at trial and what evidence to present on defendant's behalf ultimately rest with trial counsel." *People v. Wilborn*, 2011 IL App (1st) 092802, ¶ 79 (citing *People v. Munson*, 206 Ill. 2d 104, 139-40 (2002)). These types of decisions are considered matters of trial strategy and are generally immune from claims of ineffective assistance of counsel. *Id*. It is strategically sound for counsel not to call a witness whose testimony could potentially harm the defendant's case. *People v. Marshall*, 375 Ill. App. 3d 670, 677 (2007) (citing *People v. Guest*, 166 Ill. 2d 381, 400 (1995)); compare *People v. Bailey*, 374 Ill. App. 3d 608, 614 (2007) (defense counsel's performance was deficient when counsel elicited inculpatory evidence by questioning if a police officer saw the defendant speak with an unknown person on the corner and the officer responded that he saw the defendant speak with the unknown person and saw the defendant give money to the man).

¶ 29    Defendant asserts that trial counsel pursued an "untenable legal strategy over a viable one" by leaving the record "devoid of any evidence" that defendant possessed "anything other than a real gun." He relies on the decisions in *People v. Washington*, 2012 IL 107993 and *People v. Malone*, 2012 IL App (1st) 110517, for support. In *Washington*, the supreme court found that the victim's unimpeached testimony was sufficient evidence that a defendant was armed with a gun during his offense. There, the victim was abducted in broad daylight and testified that the defendant pointed a gun at him, forced him into a truck, and then held a gun to his head while he sat between the defendant and his accomplice in the front of the truck. *Id*. ¶ 35. The victim also testified that the defendant pointed the gun at him when he was later forced into the cargo area of the truck. *Id*. According to the *Washington* court, this evidence established that the victim had an

11

unobstructed view of the weapon defendant had in his possession for several minutes during the commission of the crimes and the victim testified that it was a gun. *Id.* Given the victim's "unequivocal testimony and the circumstances under which he was able to view the gun, the jury could have reasonably inferred that defendant possessed a real gun." *Id.* ¶ 36. The *Washington* court affirmed a conviction for armed robbery where the victim had a clear view of the object pointed at him and testified that it was a gun, when no gun or gun-like object was recovered and when the defense argued in its directed finding motion insufficient evidence of a firearm as charged, and argued to the jury reasonable doubt from the absence of a recovered object. *Id.* ¶¶ 10-11, 15-16, 34-37.

¶ 30    The reviewing court in *Malone* also considered whether the victim's testimony was sufficient to prove he was armed with a firearm. In that case, the defendant robbed a Walgreens store, and the cashier saw the defendant holding a gun in his right hand, described as "black or black and silver." *Malone*, 2012 IL App (1st) 110517, ¶ 4. When the cashier was asked why she thought it was a gun, she testified: " 'I seen a whole gun. It was rested on the [counter], his hand was on it, it was black.' " *Id.* ¶ 51. Asked if she had " 'ever seen the gun before,' " she said, " 'That was the first one.' " *Id.* She also said that it looked like a gun. *Id.* A surveillance video showed the "defendant displaying an object that look[ed] like a gun, which he held in his right hand." *Id.* ¶ 9.

¶ 31    On appeal, the defendant challenged the sufficiency of the evidence, arguing the prosecution's case was insufficient to prove that the object in his hand met the statutory definition of a firearm and did not fit any exceptions. *Id.* ¶ 41. The defendant noted that the gun was never recovered, the cashier's description was lacking in detail, and the video was brief and blurry. *Id.* Citing *Washington*, the *Malone* court found the cashier's "unequivocal testimony and

the circumstances under which she viewed the gun, coupled with the videotape of the offense and still photograph, in the light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt that defendant was armed with a gun that met the statutory definition of firearm and convicted him of armed robbery." *Id.* ¶ 52.

¶ 32    While we do not disagree with the holdings in *Washington* and *Malone*, we fail to see how they support defendant's claims here. Further, both cases were direct appeals in which the defendant was challenging the sufficiency of the evidence. In fact, this court relied on both decisions in defendant's direct appeal in which we rejected defendant's reasonable doubt claim. See *Jenkins*, 2016 IL App (1st) 141673-U, ¶¶ 11-12. Here, in this appeal, defendant has presented a different claim, *i.e.* trial counsel's ineffectiveness raised in a postconviction petition. His reliance on the analysis in those cases is clearly misplaced. In a sufficiency of the evidence claim, our inquiry is whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *People v. Martin*, 2011 IL 109102, ¶ 15. In contrast, on our review here, we afford great deference to a trial counsel's defense strategy. See *Peterson*, 2017 IL 120331, ¶ 80 (a mistake in trial strategy or an error in judgment by defense counsel alone will not render representation constitutionally defective). The holdings in *Washington* and *Malone* did not address an ineffective assistance claim and did not find that counsel's chosen defense strategy was untenable.

¶ 33    At defendant's trial, the State had the burden of proving beyond a reasonable doubt each element of an offense. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 224 (2009). Also, it was the State's burden to prove that defendant committed the robbery while armed with a firearm. Defense counsel argued that the State had failed to satisfy that burden. Counsel questioned Green about his ability to see the firearm for the few seconds the weapon was raised. Counsel pointed

out that the video did not clearly show what was in defendant's hand. This was a reasonable strategy to pursue at trial. A mistake in strategy, when viewed in hindsight, does not render the representation incompetent. *Fuller*, 205 Ill. 2d at 331.

¶ 34    Moreover, even if trial counsel's performance is deficient, defendant must also establish the requisite prejudice under *Strickland*. According to defendant, there was a reasonable probability that the trial court would have convicted him of aggravated robbery, rather than armed robbery, if trial counsel had questioned Detective Smith about defendant's inculpatory statement.

¶ 35    Defendant argues that if trial counsel had clarified the substance of defendant's inculpatory statement through Detective Smith, then it would have removed the most damaging evidence against him, *i.e.*, his confession. He further asserts that this testimony would have "created a meaningful opportunity" for the trial court to find the object held by defendant did not meet the statutory definition of a firearm. However, the trial court's findings did not reference defendant's inculpatory statement as a basis for its decision. The court specifically focused on Green's testimony, as well as the surveillance video. Notably, the trial judge who presided over defendant's bench trial also presided over his postconviction proceedings. In its order denying postconviction relief, the trial court held as follows.

> "Here, it cannot be said [trial counsel's] actions were unreasonable. As he
> stated during the evidentiary hearing, the theory at trial was to attack the State's
> ability to prove [defendant] was armed with a firearm during the commission of
> the offense. Therefore, it would have been unreasonable for him to introduce the
> portion of [defendant's] statement about the toy or plastic gun via cross-
> examination, as that would have placed some type of gun in [defendant's] hand

14

and that would have contravened the defense at trial. At trial, Green supplied 'no details' about the object, no firearm was recovered, and the video and photograph did not clearly show the object in [defendant's] hand. Thus, it was a reasonable and sound strategy for [trial counsel] to attempt to prove the State could not prove beyond a reasonable doubt [defendant] was armed with any gun during the commission of the offense.

Even if it could be said [trial counsel] was unreasonable for not to crossing Smith and trying to introduce the statement regarding the toy or plastic gun, it cannot be said [defendant] suffered any prejudice as a result of his actions. In making a finding of guilt, the circuit court found 'there was not an "extensive" description of the firearm, but that Green described it as black with a brown handle and "unequivocally" stated it was a firearm...The court noted that "[t]here was nothing in the record that indicated it was something other than a gun." Relying on Green's testimony and the "very clear" video, the court found defendant guilty of armed robbery with a firearm.' *People* v. *Jenkins,* 2021 IL App (1st) 182118-U, ¶ 8. As can see [*sic*], the circuit court primarily based its finding of guilt on the victim's testimony and video evidence; there was no mention in the ruling of Smith's testimony or [defendant's] inculpatory statement. Thus, it cannot be said the introduction of the statement mentioning the toy or plastic gun would likely have changed the result at trial."

¶ 36    We agree with the lower court's reasoning as discussed above. We find trial counsel's performance was not deficient and defendant has not established prejudice. Additionally, defense counsel has not provided any authority which suggests there was a reasonable probability that the

result would have been different if trial counsel had cross-examined Detective Smith about defendant's statement. The trial court's finding focused on Green's testimony and the video evidence, and notably, did not reference Detective Smith's testimony. Further, to suggest that the trial court would have found defendant guilty of only robbery is based upon pure speculation. See *People v. Bew,* 228 Ill. 2d 122, 135 (2008) ("*Strickland* requires actual prejudice be shown, not mere speculation as to prejudice."). There is no case law or any precedent to suggest the trial court would have or was required to believe defendant's statement that he only used a toy gun to rob the cashier here. We cannot say that the trial court manifestly erred in holding that defendant had not met his burden. Accordingly, the trial court's findings on defendant's claim of ineffective assistance were not manifestly erroneous.

¶ 37    Defendant next contends that his postconviction counsel provided unreasonable assistance. Specifically, he asserts that postconviction counsel's errors in her cross-examination at the evidentiary hearing and failure to make an argument on defendant's behalf show that she did not know the basic facts of defendant's postconviction claim and contradicted her certificate filed under Supreme Court Rule 651(c). Ill. S. Ct. R. 651(c) (eff. Feb. 6, 2013). The State responds that the record does not support defendant's argument, and he failed to argue that defendant was prejudiced by counsel's alleged errors, which he is required to show at third-stage proceedings.

¶ 38    The right to counsel in postconviction proceedings is statutory as provided in the Post-Conviction Act, not a constitutional right. *People v. Suarez*, 224 Ill. 2d 37, 42 (2007). Further, "a defendant in postconviction proceedings is entitled to only a 'reasonable' level of assistance, which is less than that afforded by the federal or state constitutions." *People v. Pendleton*, 223 Ill. 2d 458, 472 (2006). Rule 651(c) provides that postconviction counsel file a certificate stating

that he or she (1) consulted with the defendant to ascertain his contentions of deprivation of constitutional right, (2) examined the record of the proceedings at the trial, and (3) amended the defendant's *pro se* petition, if necessary, to ensure that defendant's contentions are adequately presented. Ill. S. Ct. R. 651(c) (eff. Feb. 6, 2013).

¶ 39 However, once a petition advances to a third-stage evidentiary hearing, Rule 651(c) no longer applies. *People v. Pabello*, 2019 IL App (2d) 170867, ¶ 28; see *People v. Marshall*, 375 Ill. App. 3d 670, 683 (2007) ("Third-stage counsel does not, as Rule 651(c) requires, examine the record or amend the petition further."). Rule 651(c) governs counsel's duties at the second stage while the third stage is simply governed by a general reasonableness standard. *Pabello*, 2019 IL App (2d) 170867, ¶ 29.

¶ 40 The reasonable level of assistance required under the Post-Conviction Act is not coextensive with the level of assistance required under *Strickland. People v. Hotwagner*, 2015 IL App (5th) 130525, ¶ 37 (citing *People v. Owens*, 139 Ill. 2d 351, 364-65 (1990)). However, although *Strickland* "is not the relevant standard" for addressing such claims, "the *Strickland* test is an essential standard for comparison." *Id*.; see *Pabello*, 2019 IL App (2d) 170867, ¶ 36 (following *Hotwagner)*. "It stands to reason that, if postconviction counsel's assistance cannot be deemed ineffective under *Strickland*, it cannot be deemed unreasonable under the [Post-Conviction] Act." *Pabello*, 2019 IL App (2d) 170867, ¶ 36 (citing *Hotwagner*, 2015 IL App (5th) 130525, ¶ 37).

¶ 41 The supreme court in *People v. Addison*, 2023 IL 127119, ¶ 38, further recognized that an unreasonable assistance claim following a third stage evidentiary hearing is not governed by the same requirements as after a second stage dismissal. "A comparison with cases considering unreasonable assistance claims at the third stage is illogical, as this court has not prescribed by

rule specific duties that counsel must perform at the third stage." *Id*. The *Addison* court discussed the reasoning in both *Pabello* and *Hotwagner* of applying a general reasonable assistance analysis to evaluate postconviction counsel after third stage proceedings. *Id*. While the supreme court declined to extend the consideration of prejudice to second stage claims, the court expressed no objection to this framework at third stage. *Id*.

¶ 42 Because defendant's postconviction relief was denied following a third stage evidentiary hearing, we review postconviction counsel's representation under the general reasonable assistance standard. Even if we evaluate defendant's claims alleged against postconviction counsel under the elevated *Strickland* standard, his claim that he was denied the right to reasonable assistance still fails.

¶ 43 According to defendant, postconviction counsel provided unreasonable assistance based on multiple errors occurring at both second and third stage proceedings. He contends his claim of ineffective assistance of trial counsel "advanced all the way to the third stage due to a mandate from this Court that recognized its merits" despite postconviction counsel's inadequate representation. This assertion misstates our holding in defendant's prior appeal. The issue before us was whether the trial court's dismissal at the first stage was in error. We concluded that defendant had satisfied the low threshold for the summary dismissal and found his claim of ineffective assistance of trial counsel was arguable. *Jenkins*, 2021 IL App (1st) 18-2118-U, ¶ 20. We remanded for further proceedings consistent with the Post-Conviction Act, but we took "no position on the merits of defendant's claim or his ability to prove that he was denied effective assistance of counsel." *Id*. This court clearly did not "mandate" that his claims should be advanced to the third stage, in fact, it was the circuit court who advanced defendant's claim.

¶ 44 Regarding the second stage proceedings, defendant asserts that counsel's Rule 651(c)

certificate was contradicted by the record and counsel failed to file a response to the State's motion to dismiss. Appellate counsel supports this claim by noting the following. During the evidentiary hearing, postconviction counsel offered no argument in opening or closing and made errors in her questions to trial counsel. Specifically, in her cross-examination, postconviction counsel asked trial counsel why did he "elect not to cross-examine the clerk [Green]." But as trial counsel responded, he had cross-examined Green at trial and specifically asked Green about what he saw in the perpetrator's hand. Defendant also points to postconviction counsel's misstatement in the following question, "You said earlier that you thought the State could not prove armed because of the nature of the vehicle -- the nature of the weapon; is that correct?" Defendant contends that this question "revealed" that postconviction counsel thought defendant had been convicted of armed robbery with a dangerous weapon rather than armed robbery with a firearm.

¶ 45    While defendant focuses a significant part his reasonable assistance claim on postconviction counsel's failure to fulfill her duties under Rule 651(c), this is not the appropriate standard following a third stage hearing. See *Pabello*, 2019 IL App (2d) 170867, ¶ 28; *Marshall*, 375 Ill. App. 3d at 683 (2007). Although defendant cites several cases in his argument, all of these cases involved a reasonable assistance claim following a second stage dismissal. See *People v. Turner*, 187 Ill. 2d 406 (1999), *People v. Perkins*, 229 Ill. 2d 34 (2007), *People v. Johnson*, 154 Ill. 2d 227 (1993), *People v. Suarez*, 224 Ill. 2d 37 (2007), *Addison*, 2023 IL 127119, *People v. Pendleton*, 223 Ill. 2d 458 (2006), *People v. Schlosser*, 2012 IL App (1st) 092523, *People v. Landa*, 2020 IL App (1st) 170851, *People v. Tillery*, 2022 IL App (1st) 200045-U, and *People v. Smith*, 2023 IL App (1st) 210909-U. Defendant fails to cite any authority relating to the review of postconviction counsel's representation following a third stage

evidentiary hearing.

¶ 46     As previously stated, a claim of ineffective assistance requires a defendant to establish

that: (1) his counsel's performance was deficient, and (2) he suffered prejudice due to counsel's

deficient performance. *Strickland*, 466 U.S. at 687. Because defendant must show both prongs,

we need only address the prejudice prong and need not consider postconviction counsel's

performance. See *Strickland*, 466 U.S. at 697.

¶ 47     In his opening brief, defendant maintains that he does not need to show prejudice for his

reasonable assistance claim. The State responds that defendant's failure to argue prejudice

precludes a finding of unreasonable assistance. See *Hotwagner*, 2015 IL App (5th) 130525, ¶ 37.

Defendant, in his reply brief, asserts that he was prejudiced by postconviction counsel's failure

"to adequately develop a factual record." By rule, defendant has forfeited his untimely prejudice

argument. Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020) provides, in relevant part, "[p]oints

not argued are forfeited and shall not be raised in the reply brief ***. Defendant's failure to

address prejudice in his opening brief was fatal to this claim.

¶ 48     Forfeiture aside, defendant has not shown how postconviction counsel's actions

prejudiced him. His allegation that postconviction counsel failed to develop an adequate record is

unsupported by any facts to support prejudice or that but for counsel's errors, the result of the

proceedings would have been different. The trial court found defendant's ineffective assistance

claim lacked merit because trial counsel presented a reasonable defense strategy and defendant

was not prejudiced by trial counsel. Nothing in the record suggests that postconviction counsel's

representation was unreasonable and/or ineffective or was the basis for the court's findings.

Accordingly, defendant has not shown a reasonable probability that the result would have been

different absent any of the alleged errors by postconviction counsel. See *Bew*, 228 Ill. 2d at 135

("*Strickland* requires actual prejudice be shown, not mere speculation as to

prejudice."). Therefore, his reasonable assistance claim fails.

¶ 49   Based on the foregoing reasons, we affirm the decision of the circuit court of Cook

County.

¶ 50   Affirmed.